Hollern, Appellant, *v.* Verhovsek.

Argued November 8, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and CERCONE, JJ. (SPAULDING, J., absent).

*Randall C. Rodkey,* with him *Caram J. Abood,* and *Green, Gibson & Abood,* for appellant.

*Edward G. Kuyat, Jr.,* with him *Robert G. Rose, Ayres, Hager, Kuyat & Walker,* and *Spence, Custer, Saylor, Wolfe & Rose,* for appellees.

OPINION BY CERCONE, J., December 13, 1971:

This case arises out of an automobile accident which occurred on the evening of September 5, 1967 at about 11:00 p.m. on Pennsylvania Route 56, Somerset County, near the entrance to Babcock State Park. The injured plaintiff, William P. Hollern, was driving on Route 56 in a westerly direction toward Windber, Pennsylvania. Route 56 is a two-lane, east-west highway. The original defendant, Robert J. Verhovsek, was traveling west on Route 56 in his automobile and was followed by additional defendant, Gerald L. Mumaw, who operated a tractor-trailer rig, owned by additional defendant D. R. Lichtenfels, leased to additional defendant B. & G. Sales Corporation, a branch of additional defendant Pittsburgh Aluminum Alloys Corporation. As defendant Verhovsek was beginning to turn into the entrance of the Babcock State Park which would have been on his left, a collision occurred between his automobile and the tractor-trailer of the additional defendants. After the collision, the tractor-trailer traveled a distance of at least 100 feet beyond the entrance to the state park where it turned over on its side, thereby blocking the entire highway and both berms with the wheels turned to the direction from which plaintiff approached in his automobile.

Plaintiff's vehicle collided with the capsized tractor-trailer and plaintiff sustained personal injuries as well as damage to his automobile.

Plaintiff then brought this action in trespass against the defendant and the additional defendants seeking damages for injuries thus sustained. The matter was called for trial.

Judith L. Hoy, a passenger in the Verhovsek automobile, who was called as plaintiff's witness, testified that a period of three to four minutes elapsed after the first accident until she saw plaintiff's automobile approaching. No flares or lights had been placed as a warning during this period because the driver of the tractor-trailer could not reach them because they were located on the side of the rig which came to rest upon the highway. At this time the scene of the accident was obscured by a dark cloud of dust and/or smoke. The dust cloud obscured the highway approximately from the park entrance to or past the rig, which lay across the road, 100 feet west of the park entrance, according to the testimony of additional defendant Mumaw. Mrs. Hoy further testified that plaintiff's car was traveling at approximately 50 miles per hour when it passed the point at which she was standing near the entrance to the Babcock State Park.

Plaintiff's testimony at trial was that he saw what he first perceived as a blackish cloud when his headlight beams focused thereon; that the dust cloud appeared different from the fog banks he had encountered on Ashtrola Road, where he had been traveling before entering Route 56; that he was traveling at approximately 50 miles per hour; that Route 56 was a straight stretch of road between two-tenths and three-tenths of a mile in length before approaching the scene where the accident occurred; that his vision was as far as his headlights would carry and he said that this would be approximately 200 to 250 feet on low beam and a slightly longer distance on high beam.

After plaintiff presented his case, the trial court sustained defendant's motion for compulsory nonsuit

on the basis that plaintiff was contributorily negligent as a matter of law, under the "assured clear distance" rule. The Vehicle Code, Act of April 29, 1959, P. L. 58, §1002. The plaintiff here appeals from an adverse decision denying his motion to take off the nonsuit, heard by the court en banc.

The trial court's ruling was based on plaintiff's violation of the statutory provision that a driver of a motor vehicle on the highway must have it under such control as will permit him to bring the vehicle to a stop within the assured clear distance ahead. Section 1002(a) of The Pennsylvania Vehicle Code, Act of April 29, 1959, P. L. 58, as amended, 75 P.S. §1002(a) reads as follows: "Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed, not greater than nor less than is reasonable and proper, having due regard to the traffic surface and width of the highway, and of any other restrictions or conditions then and there existing; and no person shall drive any vehicle, upon a highway at such a speed as to endanger the life, limb, or property of any person, nor at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead."

A review of several passages of plaintiff's testimony regarding his conduct at the time of the accident points clearly to the fact that plaintiff disregarded the mandates of the above quoted statute. Plaintiff testified that "when I had gotten into the area of Babcock State Park I saw what looked to me to be a fog cloud, a lot of grayness or smoke or fog or whatever it might be; it startled me because it was complete darkness, there was nothing there so I left my foot off the gas and at some point, I can't tell you in feet or yards, I don't know, at some point, I recognized something in this fog bank or dust bank or whatever it was I applied the brakes immediately. . .". From this passage, the trial

judge, was first alerted to plaintiff's misconduct. Here plaintiff informs that although startled by this curtain of darkness, he proceeded directly into it and did not apply his brakes until noticing something inside this dark cloud. Plaintiff thereafter testified: "The road that we had just come up, the Ashtrola Road had several patches of fog on it but not a heavy lot of fog, you would go through it and come out and go two-tenths of a mile and it would be clear. Then you would go into another one, it was a low hanging spotty fog. When I turned left on (Route) 56 and started back down the highway, what I saw at first I thought was just another fog bank. It just didn't look like fog up closer, it was too dark a fog and I left my foot off the gas and started to apply the brakes, just like a black stone wall really. I didn't know what it was at the time, I was trying to stop the car." From this the trial judge could rightly conclude that plaintiff was operating under the mistaken notion that since he was able to successfully pass through the previous patches of fog without incident, he felt no compulsion to slow down to a safe speed for this particular fog bank. In other words, based on his past success, he was lulled into a false sense of security. When plaintiff finally did realize his mistake and attempted to correct it by applying the brakes, it was then too late to avoid the accident. Finally, on cross-examination plaintiff testified: "Q. What was your speed when you first saw this particular fog or dust in the range of your headlights? A. Approximately 50 miles an hour. Q. How far was your vehicle from this cloud or patch of fog when you applied your brakes? A. I applied brakes when I was in the fog or dust. Q. Are you telling us you did not apply brakes until you were in the fog? A. Yes. Q. Prior to your going into the fog you did not apply your brakes? A. As I recall, that was the way it happened.

Q. Let me review what I understand your testimony to be, I don't mean to belabor the point, I understand you first saw this particular fog or cloud of dust in the distance illuminated by your headlights, is that correct? A. Yes. Q. When you first saw it you took your foot off the gas? A. Yes. Q. But you didn't put your brakes on until you got into the cloud of dust, is that right? A. Yes. Q. And when you first saw the cloud of dust you were going 50 miles an hour, approximately? A. Yes. Q. The cloud of dust did obscure your vision of the roadway, is that correct? A. Yes. Q. You were not able to see the roadway on the other side of the cloud of dust, is that right? A. Yes." Here plaintiff testified to conduct on his part that would clearly point to his contributory negligence as a matter of law.

It is in this context of evidence adduced from the plaintiff himself that the trial judge correctly sustained the defendant's motion for compulsory nonsuit.

Plaintiff contends that the trial judge drew inferences unfavorable to plaintiff. The case of *Downs v. Cammarano*, 207 Pa. Superior Ct. 478, 218 A. 2d 604 (1966), is cited for the proposition that "in assessing the propriety of the entry of a non-suit, we are mindful that such a judgment should be entered only in a clear case in that testimony must be read in the light most favorable to the plaintiff's case, giving him or her the benefit of all reasonable inferences flowing therefrom." In this case, the only reasonable inferences that could be drawn from plaintiff's own testimony would establish his contributory negligence as a matter of law. Under such circumstances, "it is not only the right, but the duty of a court to direct the verdict of contributory negligence as to plaintiff." *Little v. Jarvis*, 219 Pa. Superior Ct. 156, 280 A. 2d 617 (1971).

Plaintiff next contends that under the facts of the instant case, he was confronted with a sudden emer-

gency, the "extraordinary and disconcerting circumstance" which could excuse the plaintiff from a strict application of the assured clear distance rule. *Maranca v. Philadelphia*, 394 Pa. 531, 535, 147 A. 2d 413, 415 (1959); *McElroy v. Rozzi*, 194 Pa. Superior Ct. 184, 188, 166 A. 2d 331, 333 (1960). The lower court properly distinguished the *McElroy* case, supra; that case and many of the other cases cited by plaintiff in support of his contention that there was a sudden emergency are cases where a moving vehicle suddenly darted across plaintiff's path. In factual situations such as that, we are in agreement that the assured clear distance rule would not apply. However, this is not the situation in the present case. In this case, plaintiff saw the cloud of dust or fog between two hundred and two hundred and fifty feet or more in front of him, made visible to him by his automobile headlights. When in point of time this safe range of vision became hampered and thereafter totally impenetrable by his headlight beams, due either to the dust cloud or the truck or both, a duty arose upon plaintiff to not merely remove his foot from the accelerator, but also immediately apply his brakes. In spite of these conditions, plaintiff continued to commit his vehicle, at a speed of approximately 50 miles per hour, into this dark cloud of fog or dust. What plaintiff is asking us to call a "sudden emergency" was in reality an admitted area of blindness ("just like a black stone wall really"), which he was aware of at every point of time and distance once he came within the two hundred to two hundred fifty feet headlight range prior to entering into this dark cloud.

The argument of sudden emergency was presented also to excuse the operation of the assured clear distance rule in the case of *Haines v. Dulaney*, 424 Pa. 608 (1967). In *Haines*, the court said: "The sudden emer-

gency, if any in this case, arose from the fact that Geraldine Roberts Haines was operating her automobile at too great a speed to enable her to stop before crashing into the truck, or she was not paying proper attention to the roadway which the existing conditions required." This same statement would apply with equal force to the present plaintiff herein. The assured clear distance rule requires that a driver keep his vehicle under such control that he can always stop within the distance that he can clearly see. What this distance will be will vary according to the visibility at the time and other attending circumstances. *Rich v. Petersen Truck Lines, Inc.,* 357 Pa. 318 (1947). What was said in *Lauerman v. Strickler,* 141 Pa. Superior Ct. 240, 245 (1940), is also pertinent: "While unable to see what was in front of him on the highway . . . he nevertheless continued in a manner to invite disaster if anything beyond his vision confronted him on the highway. . . . And it is unavailing to say that he had no reason to expect defendant's automobile to be stopped on the highway obscured by the fog, and into which he crashed."

The decree of the learned court below, dismissing plaintiff's motion to take off compulsory nonsuit, is affirmed.