466 A.2d 686

**Raymond Paul SAYLOR**

v.

**Deborah J. ROSE, a/k/a Deborah J. Todaro, Appellant.**

Superior Court of Pennsylvania.

Argued May 19, 1982.

Filed Oct. 7, 1983.

Daniel R. Gigler, Pittsburgh, for appellant.

David J. Flower, Somerset, for appellee.

Before HESTER, McEWEN and JOHNSON, JJ.

JOHNSON, Judge:

This is an appeal from an order granting appellee, Raymond Paul Saylor, a new trial. In reviewing the decision of a trial judge to grant a new trial, we may not reverse the trial judge's order, unless he has committed a clear abuse of discretion or an error of law which necessarily controlled the grant of a new trial. *Gilligan v. Shaw*, 441 Pa. 305, 272 A.2d 462 (1971); *Sindler v. Goldman*, 309 Pa.Super. 7, 454 A.2d 1054 (1982). Finding no abuse of discretion or error of law, we affirm.

On November 13, 1975, appellee was involved in an accident along Route 30 near Jenner Township, Somerset County, Pennsylvania. Shortly after sunset, appellee was helping to unload boats from a tractor-trailer situated on the southerly berm of the highway, when he was struck by the

extended mirror on a pickup truck. The pickup truck was operated by appellant, Deborah Rose-Todaro.

Appellee commenced an action in trespass for the injuries sustained as a result of the accident. His complaint alleged *inter alia* that appellant was negligent "in failing to operate [her] vehicle so as to assure [that] the entire vehicle was within the roadway."

The case was tried before a jury. At trial, one of the basic issues for the jury's determination was the location of appellee and the pickup operated by appellant when the accident occurred. During his testimony, appellee estimated that he was six feet from the roadway when the accident occurred. This constituted the only direct reference as to appellee's position. The Pennsylvania State Trooper who investigated the accident testified that the side of the truck from which appellee worked was located approximately five feet from the roadway; and estimated that the mirror of the pickup driven by appellant extended at least fifteen inches from the side of the truck. Other testimony from appellee's witnesses concerning the position of trailer at which appellee worked was inconsistent. Appellant's testimony did not indicate where appellee was located when the accident occurred, rather she testified that she steered her vehicle close to the center line after discovering that men were working on the side of the road.

After the close of testimony but prior to the trial judge's instructions to the jury, appellee requested that the trial judge instruct the jury in accord with the following point for charge:

9. There is testimony by the defendant that her vehicle never left the highway. There is testimony that the defendant's vehicle was equipped with western style or overhanging mirrors. If you find that the defendant drove her vehicle so close to the edge of the roadway so as to allow the overhanging or western style mirror to strike the plaintiff this is negligence on the part of the defendant and your verdict should be in favor of the plaintiff.

The point was not incorporated into his instruction. During the charge, the trial judge instructed the jury as to what it should conclude if it believed one or the other of the parties, and stated that "it need [not] just find that either [appellee] was six feet off the highway or else he was on the highway." He instructed the jury that it could find that "the evidence puts [appellee] somewhere else in between" and "would put [appellant's] truck somewhere else in between." Subsequently, the jury returned a verdict for appellant.

Following the filing of post-trial motions, the trial judge granted appellee a new trial. He gave the following reason for awarding a new trial:

> [T]he charge failed to inform the jury, as point 9 validly asserts or suggests, that defendant could be negligent even if her vehicle never left the highway but was driven so close to the edge of the road as to allow her long mirror to extend beyond or to "overhang" the road and to strike plaintiff whose presence she was aware of as he was standing or working at the side of the road. In view of the facts that such was an important part of plaintiff's theory and argument, that he made a timely and specific written request for a charge upon the subject matter which was approved by the court in conference..., the trial court should have affirmed the point and covered its substance in the interest of clarifying what facts would constitute negligence and contributory negligence.

*Saylor v. Rose,* No. 303 Civil 1977, slip op. at 10–11 (C.P. Somerset County filed August 18, 1981).

In charging the jury, it is the duty of the trial judge to clarify the issues so that the jury may comprehend the questions they are to decide. *Easton National Bank and Trust, Co. v. Union National Bank and Trust Co.,* 237 Pa.Super. 316, 352 A.2d 544 (1975). If he fails to clarify the issues and the application of law to the facts, a fair trial is not present. *Smith v. Clark,* 411 Pa. 142, 190 A.2d 441 (1963); *see also Randolph v. Campbell,* 360 Pa. 453, 62 A.2d 60 (1948). It is obvious from a reading of the passage quoted above that the trial judge felt that absent adequate

coverage of the subject matter of the requested point, the jury was not apprised of a set of circumstances relevant to their determination of whether appellant was liable for having struck appellee and was not apprised of how the law should be applied to those circumstances. In light of this inadequacy, the trial court concluded that the interests of justice required that appellee receive a new trial.

Based on the evidence presented at trial, we think point No. 9 was pertinent. The jury could reconcile the inconsistent testimony presented or, if such reconciliation is not possible, it could determine questions of credibility. *Mapp v. Wombucker*, 421 Pa. 383, 219 A.2d 681 (1966). In so doing, it was at liberty to believe all or part of the testimony of appellee or appellant. *See e.g. Commonwealth v. London*, 461 Pa. 566, 337 A.2d 549 (1975). Thus, the jury could partially believe both appellee and appellant and find that appellee, while on the berm, was struck when the mirror on appellant's pickup extended from the road over the berm.[1]

Since the jury could partially believe both parties, the trial judge did not commit a clear abuse of discretion or error of law when he concluded that in failing to incorporate the substance of appellee's point in his instructions to the jury, he may have foreclosed appellee from a theory upon which the jury may have rendered a verdict in his

---

1. We distinguish the case of *Hrivnak v. Perrone*, 472 Pa. 348, 372 A.2d 730 (1977). There the issue was whether or not the plaintiff had been struck by defendant's vehicle or whether plaintiff's injuries were caused when plaintiff fell down while backing away from the vehicle. By the pleadings and proof, the jury had to decide simply whether defendant struck plaintiff with his vehicle. Here, inasmuch as it is certain appellee was struck by appellant's vehicle, the issue was one of location and distance. Appellee's testimony merely estimated where he was, he did not purport to be certain of the distance from the roadway when the accident occurred. Also he introduced evidence to show circumstantially where he was located by showing where the trailer at which he worked was situated from the roadway. We do not find, as in *Hrivnak*, that appellee's evidence assumed a posture directly hostile to the conclusion that he was on the berm and appellant's vehicle was on the highway.

favor.[2] We are aware that there are other grounds upon which the jury could render a verdict against appellee. However, based on the inadequate instructions its verdict could have been founded upon the erroneous belief that it could only find for appellee if it found that appellant drove her truck off the road. This is sufficient grounds for a new trial. *Cf. Jones v. Montefiore Hospital,* 494 Pa. 410, 431 A.2d 920 (1981).

Finding no abuse of discretion or error of law, we now affirm the order awarding appellee a new trial.

McEWEN, J., filed a dissenting opinion.

McEWEN, Judge, dissenting:

The majority has provided a careful analysis as well as a most persuasive expression of view but I am convinced that the parties should here be bound by the verdict of the jury and, therefore, I most respectfully dissent.

As the majority has noted, the accident occurred just after darkness had fallen, at approximately six p.m. on a November evening, while appellee was helping to unload boats from a tractor trailer parked along the southern shoulder of a highway that was wet from rain and snow. It is undisputed that appellee was struck by a pick-up truck operated by appellant and equipped with extended mirrors. The opinion of the trial judge summarizes the testimony of each of the parties as follows:

> Plaintiff testified that immediately before being struck he was standing 6 feet from the paved portion of the highway, heard the sound of gravel being disturbed, and was then struck and knocked down. Defendant testified that as she approached the area she noticed the men working along the road, that she did not realize she had struck anything until after she had passed the area when she realized she had hit something and pulled off the highway and stopped to learn what had happened. She stated that

**2.** *See e.g. Russell v. Helms Express,* 221 Pa.Super. 292, 293 A.2d 78 (1972) (cases cited therein).

at all times her vehicle was entirely on the highway on her side of the road and in her lane of traffic, near the center line.

While his scrupulous concern that the charge be fair caused the distinguished Somerset County Judge Charles H. Coffroth to overturn the verdict and order a new trial, it is my opinion that the instructions were not in the least deficient since the charge of the court covered in quite adequate fashion all of the issues which the jury was to consider.

The factual issues were described in the charge by the trial judge as follows:

As we've already said in essence, in substance, the plaintiff's case is that he was about 6 feet from this highway when he was working with his back toward the highway helping to unload these boats; that he heard shale moving or being thrown or something like that—he heard shale and he turned his head and he was hit in the cheek. That caused his injury.

Now, if he was 6 feet off the highway when he was hit by this car—even by the extended mirror, which according to the testimony extended 15, or one witness said 18 or 19 inches from the truck, obviously that truck had to be off the highway or at least the mirror had to be off. If it would be 6 feet, it would clearly look like both of them—the mirror and the truck—would have had to be on the berm where he was.

He argues of course that that was negligence, that Mrs. Todaro knew this road. She knew the mirror was there. She even knew the plaintiff was there because she saw him and that this was not reasonable care under the circumstances. She should have stayed on the highway. If you would find those facts to be true, of course you could find her solely negligent.

Mrs. Todaro, on the other hand, has a rather completely different version of the event. She says that she was not at all off the highway. According to her testimony, as I understand it, she was at all times in a position on the

highway when even her mirror would not have extended over the highway. So obviously if that was the case, it would seem logical to conclude that Mr. Saylor was on the highway in order to get hit by that mirror. Obviously, if that was the case, you could hardly find Mrs. Todaro guilty of negligence, and you might find Mr. Saylor guilty of negligence.

So a great deal depends on how you find the facts, which witnesses' testimony you accept. Now, you don't need to just find that either Mr. Saylor was 6 feet off the highway or else he was on the highway. It is entirely possible that your judgment of the evidence would put him somewhere else in between. It is entirely possible that your judgment of the evidence would put Mrs. Todaro's truck somewhere else in between.

So here you get into the problem of deciding what the facts were, where were these people when the collision occurred, because you've got to decide whether they used reasonable care in getting there and being there under all the circumstances.

That summary of the factual issues was preceded in the charge by a thorough review of the pertinent legal principles including quite appropriate emphasis upon the notions of negligence and contributory negligence.

The trial judge concedes in his opinion that there was no error in the charge but concluded that the omission of the subject point that had been submitted by appellee was error since the charge thereby "failed to inform the jury ... that defendant could be negligent even if her vehicle never left the highway but was driven so close to the edge of the road as to allow her long mirror to extend beyond or to 'overhang' the road and to strike plaintiff." I do not agree. The charge of the court was quite satisfactory. When Judge Coffroth decided that this particular point of charge was necessary he was unfair to himself. *See Kitchen v. Borough of Grampian*, 421 Pa. 464, 219 A.2d 685 (1966).

The basic issue for determination by this jury was the location of the plaintiff and of the vehicle of the defendant

with regard to the edge of the highway and the crucial task of the jury was to resolve the dispute in the testimony concerning that issue. Thus, it is seen that the assignment of the jury was far from complex and, in fact, would be considered to be quite fundamental. The details of the occurrence had been the subject of testimony by all those present, specifically, appellee and his companions, all of whom were engaged in unloading boats from a tractor trailer parked on the berm of the highway, as well as the appellant operator of the striking vehicle and the state trooper who investigated the accident. All of that testimony then became the subject of an address by counsel for each of the parties, which included reference to the extended mirror. As we have already noted, the applicable principles of law were satisfactorily defined by the court and the factual summary was quite complete and included a reference to the fact that the pick-up truck of the appellant had extended mirrors. It is my view that the trial judge exercised prudent judgment by failing to include the requested point for charge in his instructions since there simply was no need for the court to place special emphasis upon the issue of the extended mirror in view of the thorough summary of the factual issues that had been provided the jury by the court.

Since a careful and fair trial was conducted, the charge of the court was adequate, proper and satisfactory, and there was certainly a substantial evidentiary basis for the verdict of the jury, a new trial is not imperative. "Although the grant of a new trial will not be disturbed by us if anything appears in the record to justify it, [the reason] cited by the court below [does not] furnish any valid ground for compelling the appellant, the verdict-winner, to retry the case." *Gombar v. Schaeffer*, 202 Pa.Super. 282, 284, 195 A.2d 527, 528 (1963). There is simply no reason why the verdict here should be rejected and the verdict winner be required to retry the case.

The right to a trial by a jury is zealously guarded because the benefits of a trial by jury are not simply theoretical but

have through the centuries proven so real as to become self-evident. As a result, our trust in the value of the jury verdict in resolving the type of factual issue here presented—as distinguished from a verdict upon a complex question of medical or product liability—should be near absolute. The founders concluded that a band of the citizenry—peers, says the Magna Carta—is naturally suited to the task of resolving factual disputes, whether the difference in testimony be innocent or influenced by personal interest; in addition, of course, it is an obvious and certain fact that the court room cause—whether it be of an accused or of a litigant—is, if not prudently never left to the sovereign, always more wisely entrusted to the people than to the government or any of its branches.

Once we acknowledge that the value of the jury system is not mere premise but fact, it naturally follows that the verdict of a jury should be considered to be controlling and final. While it is undisputed that a safety valve is necessary and that a trial judge should be able to reject a verdict, that safety valve should be triggered only when there is a gross disparity between the verdict and the evidence *or* there has been gross *and* harmful error. Neither of those tests are here met.

It may well be that the new trial the majority agrees should be afforded this claimant will witness a verdict for plaintiff replace the verdict for defendant. Most assuredly, however, such a result will not be an effect of the addition of the few brief phrases that trial judge now wishes he had included in his charge. Rather, the verdict at the forthcoming trial is more likely to be affected by factors quite unrelated to the instructions, including such factors as improved presentation by the plaintiff or his counsel, or the presence of different counsel for the defendant or personal characteristics of dominant jurors or some other such vagary to which the cause of the prevailing party at the first trial should not be exposed nor the verdict winner be forced to submit.

The fundamental purpose of the instructions by a court is to express to the jury in general, survey fashion a basic outline of the applicable principles of law so that the jury might have the benefit of certain essential rules as the members assort the testimony, reflect upon the evidence and assemble a verdict. No one would contend that what should trouble a sophisticated student of the law would also trouble a juror; and while the instruction provided the jury is to be something more than a flask, it is not expected to resemble fine Waterford crystal. The most able of trial counsel will in a candid moment concede that the true value of the charge is the fertile field provided for assertion of error during appellate review rather than the guidance and direction sought to be supplied to the jury. If the charge of the court is to achieve the goal of assisting the jury and is not to be considered as a credit balance available for redemption in the event of an adverse verdict, then a verdict should be final, absent a gross shortcoming in the trial—specifically, as earlier noted, unless there is a gross disparity between the verdict and the evidence or there has been gross and harmful error.

In essence, I am of a mind that both the trial judge and the jury performed quite well and that, therefore, the verdict should stand.