642 A.2d 1108

**Hugh F. CANNON, III and Mary Cannon, H/W, Appellants,**

**v.**

**Marek TABOR, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 14, 1993.

Filed June 1, 1994.

234

Roger J. Harrington, Philadelphia, for appellants.

Frank S. Blatcher, Thornton, for appellee.

Before McEWEN, OLSZEWSKI and HOFFMAN, JJ.

McEWEN, Judge.

This appeal has been taken from an order which denied the motion for post-trial relief filed by Hugh F. Cannon, III, and Mary Cannon (hereinafter appellants), as a result of which judgment was entered against them and in favor of Marek Tabor (hereinafter appellee), following a jury verdict in favor of appellee in this personal injury action instituted by appellants to recover damages for injuries sustained in an intersectional automobile accident. We vacate the judgment entered in favor of appellee and remand for a new trial.

The complaint, filed by appellants on January 25, 1989, sought damages for the injuries sustained by appellant Hugh F. Cannon, III, as the result of a motor vehicle collision which occurred on May 25, 1988. The accident occurred at the intersection of Abbottsford Road and Fox Street in Philadelphia, at an intersection controlled by a traffic light, as appel-

lant Hugh Cannon was traveling east on Abbottsford Road and appellee was traveling north on Fox Street.

Appellee testified that, as he approached the intersection of the two roads, the light controlling northbound traffic on Fox Street was red and that he came to a complete stop. Appellee further testified that, seconds after stopping on Fox Street, the traffic light turned green, that he looked left and did not see the car operated by appellant Hugh Cannon, and that he then proceeded into the intersection. Once in the intersection, appellee testified that only then did he see the other car rapidly approaching and that he unsuccessfully tried to accelerate out of its path but was unable to avoid the collision.

Appellant Hugh Cannon testified that, as he approached the intersection, he saw appellee's car stopped at the traffic light. Mr. Cannon further testified that he, having the green light, proceeded into the intersection at which point appellee suddenly moved into the intersection against the red light on Fox Street and, although appellant immediately applied his brakes and sounded his horn, he was unable to avoid striking the vehicle driven by appellee.

Following a three-day trial, the jury found that appellee had not been negligent and rendered a verdict in his favor. Appellants filed post-trial motions which requested either the grant of judgment n.o.v. on liability and a new trial limited to the issue of damages or, in the alternative, a new trial.[1] The trial court denied the motions and this appeal timely followed.

1. The argument that appellant is entitled to judgment n.o.v. may be summarily rejected:

The standard of review of an appellate court when considering an order granting or denying judgment n.o.v. is the same as that used by the trial court: we must determine whether there was sufficient competent evidence to sustain the verdict, granting the verdict winner the benefit of every reasonable inference that can be reasonably drawn from the evidence and rejecting all unfavorable testimony and inferences. Judgment n.o.v. is appropriate only in a clear case where the facts are such that no two reasonable minds could fail to agree that, as a matter of law, the party has failed to make out his case. *Rocker v. Harvey Co.*, 370 Pa.Super. 32, 36–37, 535 A.2d 1136, 1138 (1988). *Accord: Community College, etc. v. Community College,* 473 Pa. 576, 375 A.2d 1267 (1977). Since the parties presented contradictory testimony as to the traffic signals, it became the duty of the jury to

The appellants argue that they are entitled to a new trial since the court instructed the jury on the assured clear distance ahead rule.[2] The principles which govern our review of such a claim are well settled:

In reviewing alleged error in jury instructions we apply the standard recited in *Sweitzer v. Dempster Systems*, 372 Pa.Super. 449, 539 A.2d 880 (1988), as follows:

Where the motion for a new trial is based upon the sufficiency of the jury charge, we must examine the charge in its entirety against the background of the evidence to determine whether error was committed. If an appellate court concludes that the charge was errone-

consider and resolve the conflicting testimony. As for the testimony of appellant husband and the accident investigation officer that appellee had admitted that he had been watching the wrong traffic signal, appellee denied at the trial that he had looked at the wrong traffic signal and advised that, by reason of his limited English language skills, his statements at the scene of the accident were misunderstood. We cannot say that this is a situation where no two reasonable individuals could differ as to whether appellee had been negligent and, therefore, the trial court properly referred the factual dispute to the jury. Thus, appellants fall short of the standard required for the entry of judgment n.o.v.

2. Appellants further argue that the rejection by the trial court of four of the points for charge submitted by appellants constituted reversible error. The trial court refused the points submitted because the substance of the specific instructions requested by appellants were covered by the court's general charge. We agree. *See: Strickler v. Huffine*, 421 Pa.Super. 463, 475–77, 618 A.2d 430, 437 (1992); *Ottavio v. Fibreboard Corp.*, 421 Pa.Super. 284, 295, 617 A.2d 1296, 1302 (1992); *Summit Fasteners, Inc. v. Harleysville National Bank & Trust Co., Inc.*, 410 Pa.Super. 56, 61–63, 599 A.2d 203, 206 (1991), *allo. denied*, 530 Pa. 633, 606 A.2d 902 (1992).
Appellants also challenge the refusal of the court to instruct the jury that a motorist cannot be heard to say he properly looked in both directions before entering an intersection where the motorist failed to see what would have been obvious had he looked. The trial court correctly reasoned that "[t]his instruction can not be given without taking several facts for granted which were not in evidence or were, in the least, in dispute." An alleged error in jury instructions must be considered in light of the evidence presented at trial. *General Equipment Manufacturers v. Westfield Ins. Co.*, 430 Pa.Super. 526, 547–548, 635 A.2d 173, 184 (1993); *Butler v. Kiwi, S.A.*, 412 Pa.Super. 591, 594–96, 604 A.2d 270, 272 (1992), *allo. denied*, 531 Pa. 650, 613 A.2d 556 (1992). Since this instruction would have assumed facts not in evidence, the trial court's refusal to give such an instruction was not error.

ous, a new trial will be granted only if the jury charge might have prejudiced the appellant. A new trial will be granted even though the extent to which the appellant had been prejudiced is unascertainable. *Gallo v. Yamaha Motor Corporation USA,* 363 Pa.Super. 308, 321–322, 526 A.2d 359, 366 (1987).

*Id.* at 453, 539 A.2d at 882. *See also: Leaphart v. Whiting Corp.,* 387 Pa.Super. 253, 564 A.2d 165 (1989), *allo. denied,* 525 Pa. 619, 577 A.2d 890 (1990); *Jistarri v. Nappi,* 378 Pa.Super. 583, 549 A.2d 210 (1988). An alleged inadequacy in jury instructions constitutes trial error if the jury was probably misled by what the trial judge said or there is an omission in the charge which amounts to fundamental error. *Voitasefski v. Pittsburgh Rys. Co.,* 363 Pa. 220, 226, 69 A.2d 370, 373 (1949). *See also: Sweeny v. Bonafiglia,* 403 Pa. 217, 221, 169 A.2d 292, 294 (1961); *Giorgianni v. DiSanzo,* 392 Pa. 350, 140 A.2d 802 (1958); *Hajduk v. Fague,* 200 Pa.Super. 55, 186 A.2d 869 (1962). As a general rule, refusal to give a requested instruction containing a correct statement of law is ground for a new trial unless the substance thereof has otherwise been covered in the court's general charge. *Butler v. DeLuca,* 329 Pa.Super. 383, 390, 478 A.2d 840, 844 (1984); *Furey v. Thomas Jefferson University Hosp.,* 325 Pa.Super. 212, 227, 472 A.2d 1083, 1091 (1984).

*Ottavio v. Fibreboard Corp., supra* 421 Pa.Super. at 294–95, 617 A.2d at 1301–1302. *See also: General Equipment Manufacturers v. Westfield Ins. Co., supra* 430 Pa.Super. at 547–548, 635 A.2d at 184; *Strickler v. Huffine, supra* 421 Pa.Super. at 475, 618 A.2d at 437; *Summit Fasteners, Inc. v. Harleysville National Bank & Trust Co., Inc., supra* 410 Pa.Super. at 61–63, 599 A.2d at 206; *Bailey v. Pennsylvania Elec. Co.,* 409 Pa.Super. 374, 390–91, 598 A.2d 41, 49 (1991).

The trial judge, quoting Section 3361 of the Motor Vehicle Code, 75 Pa.C.S. § 3361, instructed the jury as follows:

[d]riving a vehicle at a safe speed is also a statutory requirement and states as follows: *no person shall drive a vehicle at a speed greater than is reasonable and prudent*

*under the conditions and having regard to the actual and potential hazard that is existing or at a speed greater than will permit a driver to bring his vehicle to a stop within the assured clear distance ahead.* Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad crossing, when approaching or going around curves, or when approaching a hill crest or traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions. So this act essentially dictates the duties of care required by someone in situations related to this case. You must determine whether there was any negligence on the part of either of the parties and whether it was a substantial factor in bringing about the plaintiffs' injuries resulting from this statutory requirement. The operator of a motor vehicle must at all times exercise reasonable care and prudence under the circumstances and must have his car under such control that it could be stopped before doing injury to any person in any situation reasonably apt to arise from the circumstances.

The primary duty of the trial judge in charging the jury is to clarify the legal principles involved so that the jury may comprehend the questions that it must decide. *Sedlitsky v. Pareso,* 425 Pa.Super. 327, 332, 625 A.2d 71, 74 (1993); *Lee v. Pittsburgh Corning Corp.,* 420 Pa.Super. 423, 430–31, 616 A.2d 1045, 1049 (1992); *Spearing v. Starcher,* 367 Pa.Super. 22, 29, 532 A.2d 36, 40 (1987); *Brandimarti v. Caterpillar Tractor Co.,* 364 Pa.Super. 26, 28–29, 527 A.2d 134, 136 (1987), *allo. denied,* 517 Pa. 629, 539 A.2d 810 (1988). The wide variety of circumstances which may surround any given automobile accident means that the issues presented in each motor vehicle accident case are inherently fact specific. This requires special attention on the part of the trial court to identify the relevant facts and to present to the jury *only* those legal principles which are relevant to the issues raised by the evidence presented in that particular case. Extended reflection upon the issues presented by this appeal and scruti-

ny of Pennsylvania case law obliges us to grant appellants a new trial and prompts the notion that it may well be beneficial to reiterate the legal principles applicable to those intersectional accidents in which both parties claim that they had the right-of-way.[3]

The assured clear distance rule, which is based upon Section 3361 of the Vehicle Code, 75 Pa.C.S. § 3361, requires that a driver be capable of bringing his/her vehicle to a stop within the distance that he/she can clearly see. *Springer v. Luptowski*, 535 Pa. 332, 336, 635 A.2d 134, 136 (1993); *Dranzo v. Winterhalter*, 395 Pa.Super. 578, 593–94, 577 A.2d 1349, 1357 (1990); *Spearing v. Starcher, supra* at 25–29, 532 A.2d at 38–39; *Mickey v. Ayers*, 336 Pa.Super. 512, 516–20, 485 A.2d 1199, 1202–1203 (1984); *Elder v. Orluck*, 334 Pa.Super. 329, 341–42, 483 A.2d 474, 481 (1984), *aff'd*, 511 Pa. 402, 515 A.2d 517 (1986); *Brown v. Schriver*, 254 Pa.Super. 468, 471–74, 386 A.2d 45, 47–48 (1978); *Unangst v. Whitehouse, supra* at 463, 344 A.2d at 698; *Reifel v. Hershey Estates*, 222 Pa.Super. 212, 214, 295 A.2d 138, 139 (1972).

> "Assured clear distance ahead" means only what it says: a clear distance that is assured, that is, one that can reasonably be depended on. The rule does not mean that the motorist must carry in his mind every possible series of combinations which could conspire against him, and that he must transport ready-made solutions to overcome all fortuitous hazards which suddenly face him. *Assured* does not mean *guaranteed.*

*Fleischman v. City of Reading*, 388 Pa. 183, 185–86, 130 A.2d 429, 431 (1957) (emphasis in original).

It is apparent that this distance, the range of a driver's vision, may vary according to the visibility at the time and other attendant circumstances, *Stark v. Fullerton Trucking*

---

**3.** Case law suggests that this area has long been one subject to uncertainty. Nearly twenty years ago, in *Unangst v. Whitehouse*, 235 Pa.Super. 458, 463, 344 A.2d 695, 698 (1975), this Court noted that:

> In order to decide the issues here presented we feel compelled to attempt to consolidate the various rulings into one consistent rule to which the present factual situation may be applied.

*Co.,* 318 Pa. 541, 179 A. 84 (1935), and that it may be "long, as on a straight road in bright daylight, or it may be shortened by storm, fog, a curve in the road or other conditions." *Gaber v. Weinberg,* 324 Pa. 385, 388, 188 A. 187, 188 (1936). At night, the assured clear distance is the scope of the driver's headlights. . . .

*Unangst v. Whitehouse, supra* 235 Pa.Super. at 463, 344 A.2d at 698.

■■■■ The applicability of the assured clear distance ahead rule is generally a question of fact for the jury. *Smith v. Brooks,* 394 Pa.Super. 327, 338, 575 A.2d 926, 932 (1990); *Fish v. Gosnell,* 316 Pa.Super. 565, 579–80, 463 A.2d 1042, 1050 (1983). This question, however, should only be presented to the jury where the facts introduced at trial, either conceded or disputed, conceivably develop a factual scenario which evokes the principles fundamental to the rule. There are a number of factors which may preclude the rule's applicability. For example, the assured clear distance rule applies *only* to objects which are static or essentially static, including vehicles moving in the same direction. *McKee by McKee v. Evans,* 380 Pa.Super. 120, 150 n. 5, 551 A.2d 260, 274 n. 5 (1988), *allo. denied,* 522 Pa. 600, 562 A.2d 824 (1989); *Mickey v. Ayers, supra* at 518, 485 A.2d at 1203; *Elder v. Orluck, supra* at 343, 483 A.2d at 482; *Brown v. Schriver, supra* at 475, 386 A.2d at 49; *Unangst v. Whitehouse, supra* at 464–65, 344 A.2d at 699. Furthermore, since the rule applies only to those objects which a reasonable and prudent driver should be able to see, the rule may be inapplicable to cases in which the object ahead, for whatever reason, is indiscernible. *See, e.g.: Stano v. Rearick,* 441 Pa. 72, 271 A.2d 251 (1970); *Colonial Trust v. Elmer C. Breuer, Inc.,* 363 Pa. 101, 69 A.2d 126 (1949); *Farley v. Ventresco,* 307 Pa. 441, 161 A. 534 (1932); *Heffner by Heffner v. Schad,* 330 Pa.Super. 101, 478 A.2d 1372 (1984); *Brown v. Schriver, supra.*

Another exception to the assured clear distance rule involves the sudden emergency doctrine which has been defined:

[A]s a defense to a defendant who suddenly and unexpectedly finds himself confronted with a perilous situation that permits no opportunity to assess the danger and respond

appropriately. *Carpenter v. Penn Central Transportation Co.,* 269 Pa.Super. 9, 409 A.2d 37 (1979); *Stacy v. Thrower Trucking, Inc.,* 253 Pa.Super. 150, 384 A.2d 1274 (1978). The doctrine is successfully applied as a defense where the defendant proves that he did not create the emergency, *Westerman v. Stout,* 232 Pa.Super. 195, 335 A.2d 741 (1975); *Toff v. Rohde,* 208 Pa.Super. 411, 222 A.2d 434 (1966), and where he responded in a reasonable fashion. *Westerman, supra; Johnson v. Pennsylvania Railroad Company,* 399 Pa. 436, 160 A.2d 694 (1960). The party confronting the peril simply is not expected to exercise that same degree of care mandated by normal and foreseeable circumstances. In fact, he is not required to exercise the highest or even an ordinary degree of judgment; therefore, he will not be responsible for any mistake of judgment in extricating himself from the impending dangerous situation.

*Chiodo v. Gargloff & Downham Trucking Co.,* 308 Pa.Super. 498, 500–01, 454 A.2d 645, 646 (1983). *Accord: Papandrea v. Hartman,* 352 Pa.Super. 163, 507 A.2d 822 (1986); *Elder, supra; Sagan v. DeStefano,* 329 Pa.Super. 360, 478 A.2d 828 (1984); *Carpenter v. Penn Central Transp. Co.,* 269 Pa.Super. 9, 409 A.2d 37 (1979). The rule arises "where . . . because of the shortness of time [with]in which to form judgment in an emergency not created by his own negligence [the actor] fails to act in the most judicious manner. . . ." *Noll v. Marian,* 347 Pa. 213, 215, 32 A.2d 18, 19 (1943). It implies the "failure to perform a duty so suddenly and unexpectedly arising that there was no opportunity to apprehend the situation and to act according to the exigency." *Id.,* 347 Pa. at 215, 32 A.2d at 19; *Moore v. Meyer & Power Co.,* 347 Pa. 152, 154, 31 A.2d 721, 722 (1943); *Sagan, supra* 329 Pa.Super. at 368, 478 A.2d at 832. *Accord McElroy v. Rozzi,* 194 Pa.Super. 184, 166 A.2d 331 (1960). "The purpose of the sudden emergency doctrine is to relieve a victim from the sometimes stringent reasonable man standard when he is confronted with an occurrence that permits no opportunity to apprehend the situation and act accordingly." *Carpenter,* 269 Pa.Super. at 16, 409 A.2d at

40. It flows from "an occurrence requiring some form of immediate, evasive action." *Id.*, 269 Pa.Super. at 16, 409 A.2d at 40.

This doctrine has been applied most often in motor vehicle accident cases where the operator was confronted with a perilous, often life-threatening situation requiring spontaneous response to avoid the impending danger of a collision. *Carpenter, supra.* One invoking the defense of sudden emergency cannot be responsible for creating that very peril and is ordinarily excused from liability because he lacked the time to react as he would have done under otherwise foreseeable circumstances. Thus, one driving carelessly or recklessly cannot avail himself of the rule's protection, since, normally, the peril would not have arisen in the first instance. *Chadwick v. Popadick*, 399 Pa. 88, 159 A.2d 907 (1960); *Downey v. Rymorowicz*, 397 Pa. 205, 154 A.2d 179 (1959); *Levine v. Mervis*, 373 Pa. 99, 95 A.2d 368 (1953); *Arble v. Murray*, 359 Pa. 12, 58 A.2d 143 (1948); *Randolph v. Campbell*, 360 Pa. 453, 62 A.2d 60 (1948); *Nark v. Horton Motor Lines, Inc.*, 331 Pa. 550, 1 A.2d 655 (1938); *Hollern v. Verhovsek*, 220 Pa.Super. 343, 287 A.2d 145 (1971).

*McKee by McKee v. Evans, supra* at 146–48, 551 A.2d at 272–273.

█ Where a sudden emergency arises *inside* the range of the previously assured clear distance ahead, the assured clear distance ahead rule is inapplicable, *see Dranzo v. Winterhalter, supra* 395 Pa.Super. at 593–94, 577 A.2d at 1357; *McKee by McKee v. Evans, supra* 380 Pa.Super. at 150 n. 5, 551 A.2d at 274 n. 5; *Mickey v. Ayers, supra* 336 Pa.Super. at 516–20, 485 A.2d at 1202–1203; *Elder v. Orluck, supra* 334 Pa.Super. at 341–43, 483 A.2d at 481–482; *Polumbo v. DeStefano*, 329 Pa.Super. 360, 364, 478 A.2d 828, 831 (1984); *Brown v. Schriver, supra* 254 Pa.Super. at 474, 386 A.2d at 48; *Unangst v. Whitehouse, supra* 235 Pa.Super. at 463, 344 A.2d at 698; *Reifel v. Hershey Estates, supra* 222 Pa.Super. at 215, 295 A.2d at 140, since the two doctrines are, as a general rule,

mutually exclusive. *See: McKee by McKee v. Evans, supra* 380 Pa.Super. at 150 n. 5, 551 A.2d at 274 n. 5; *Elder v. Orluck, supra* 334 Pa.Super. at 341–43, 483 A.2d at 481–482; *Brown v. Schriver, supra* 254 Pa.Super. at 473–77, 386 A.2d at 48–49.[4]

4. There are cases which have permitted the jury to be instructed on both the assured clear distance ahead rule and the sudden emergency doctrine. *See, e.g.: Papandrea v. Hartman,* 352 Pa.Super. 163, 507 A.2d 822 (1986); *Potenburg v. Varner,* 284 Pa.Super. 19, 424 A.2d 1370 (1981). Such a coupling of instructions, however, was limited by those cases to situations in which, due to the disputed facts at issue in those cases, the very existence of facts which could support a finding of a sudden emergency was a question for the jury. *See: Papandrea v. Hartman, supra* at 169, 507 A.2d at 826; *Potenburg v. Varner, supra* at 22, 424 A.2d at 1372. *See also: McKee by McKee v. Evans, supra* at 150 n. 5, 551 A.2d at 274 n. 5; *Elder v. Orluck, supra* at 343, 483 A.2d at 482.

There are, however, a very limited number of factual scenarios in which both charges can be properly given to the jury and it is the presence of these facts which determine how the jury is charged. A review of all of the relevant case law suggests that this factual distinction has become blurred over time.

Note 4—Continued

We begin our analysis with the most recent recitation of this position by this Court in *Papandrea v. Hartman, supra,* in which the court wrote: "[W]here the evidence leaves some doubt as to whether an emergency existed, there is a question of fact for the jury, and the jury should be instructed on *both* the assured clear distance ahead and sudden emergency doctrines. The dual instruction assures that the jury has the applicable law for whatever factual scenario they find occurred." *Ernst v. Ace Motor Sales,* 550 F.Supp. 1220, 1226 (E.D.Pa.1982), *affirmed without opinion,* 720 F.2d 661 (3d Cir.1983) (emphasis in original); *Potenburg v. Varner,* 284 Pa.Super. 19, 424 A.2d 1370 (1981).

*Papandrea v. Hartman, supra* at 170, 507 A.2d at 826. The cases upon which the court in *Ernst v. Ace Motor Sales* relied were *Potenburg v. Varner, supra, Stacy v. Thrower Trucking, Inc., infra,* and *Unangst v. Whitehouse, supra.*

In tracing the citation trail to its origins, it would seem that this line of cases originated in *Casey v. Siciliano,* 310 Pa. 238, 165 A. 1 (1933), where the plaintiff was a passenger in a street car which was struck by the vehicle driven by the defendant as he attempted to pass the trolley car, causing plaintiff to be injured when she was thrown from her seat. Defendant claimed that, as he started to pass the trolley, a child started to move from the curb in front of his car, creating a "sudden emergency" and that the existence of this sudden emergency relieved him of any liability. Plaintiff argued that defendant's prior negligent driving in attempting to pass the trolley precluded him from the protection of the sudden emergency doctrine. The Supreme Court concluded that, where a driver claims that his actions were in response to a sudden emergency and the facts do not conclusively establish the existence of such an emergency, *that* is a question for the jury to decide.

A review of the facts underlying *Casey* and the jury charge that was given reveal obvious distinctions in *Casey* and some of the cases which

have applied its reasoning. Not all of the cases which have cited *Casey* have recognized that it cannot properly be cited as endorsing an assured clear distance ahead instruction involving on-coming and laterally-moving vehicles. The facts of *Casey* actually evoke the principles of the assured clear distance ahead rule, most notably, the fact that, at the time the accident occurred, the trolley was a stationary object. The assured clear distance ahead rule applies only to static or essentially static objects. *See: McKee by McKee v. Evans, supra* 380 Pa.Super. at 150 n. 5, 551 A.2d at 274 n. 5; *Mickey v. Ayers, supra* 336 Pa.Super. at 518, 485 A.2d at 1203; *Elder v. Orluck, supra* 334 Pa.Super. at 343, 483 A.2d at 482; *Brown v. Schriver, supra* 254 Pa.Super. at 475, 386 A.2d at 49; *Unangst v. Whitehouse, supra* 235 Pa.Super. at 464, 344 A.2d at 699. Secondly, the assured clear distance rule was not even an instruction which was given to the jury in *Casey*. Rather, the charge given alongside the sudden emergency doctrine was that of a general duty of care and control on the road. *See: Casey v. Siciliano, supra* 310 Pa. at 239–42, 165 A. at 1–2. The question submitted to the jury was whether or not defendant's actions precluded his reliance on the sudden emergency doctrine.

The second vital incarnation of this proposition was in *Levine v. Mervis*, 373 Pa. 99, 95 A.2d 368 (1953), in which the parties were involved in a head-on collision. As in *Casey*, the defendant sought the protection of the sudden emergency doctrine and the Supreme Court, citing *Casey*, concluded again that it was proper for the jury to decide if there was any negligence on behalf of the defendant which precluded application of the sudden emergency doctrine. As in *Casey*, there was no mention of the assured clear distance ahead rule, nor could there have been since the accident involved a head-on collision.

The anomalous and intricate nature of the issue is first revealed in *Reifel v. Hershey Estates, supra*, where the appellant was traveling on a road and, when approximately 70 feet from an intersection, noticed that a truck driven by the appellee had stopped at a stop sign which was set back approximately 30 feet from the point where the two roads intersected. The appellant noticed that the appellee had begun to slowly proceed into the intersection but, assuming that appellee would yield the right-of-way, appellant continued on without slowing down and struck appellee's truck when it did in fact enter the intersection. The trial court charged the jury on both the sudden emergency doctrine, appellant claiming that she was faced with a sudden emergency, and the assured clear distance ahead rule.

This Court in *Reifel*, citing *Casey* and *Levine*, correctly stated that since reasonable minds may differ as to whether a sudden emergency actually existed, that determination was properly left to the jury. This Court went on, however, to conclude that, since it was debatable as to whether a sudden emergency existed, it was also proper to charge the jury on the assured clear distance ahead in the event that there was no emergency. *Reifel v. Hershey Estates, supra* 222 Pa.Super. at 215, 295 A.2d at 140. That approval presents a certain difficulty. First, as the rule applies only to static or essentially static objects, it was inapplicable to this situation in which the vehicles were in motion and were perpendicularly positioned. Secondly,

[i]f the entry was made within the assured clear distance ahead but at a point sufficiently distant to *still allow the driver sufficient time in which to stop*, the duty imposed is not that of the assured clear distance rule but rather that of the general duty of care and control of the road. *See Enfield v. Stout* [400 Pa. 6, 161 A.2d 22 (1960)]; *see also Reich v. Miller*, 260 Iowa 929, 151 N.W.2d 605 (1967); *Wells v. Wildin*, 224 Iowa 913, 277 N.W. 308 (1938). *Cf. Greene v. Morelli Bros.*, [463 F.2d 725 (3d Cir.1972)]. The assured clear distance ahead rule is thus not applicable where an instrumentality moves into the driver's path within a distance short of the assured clear distance ahead. *Hollern v. Verhovsek*, [220 Pa.Super. 343, 287 A.2d 145 (1971)]; *Mihalic v. Texaco, Inc.*, [377 F.2d 978 (3d Cir.1967)]. *Unangst v. Whitehouse, supra* 235 Pa.Super. at 467–68, 344 A.2d at 700 (emphasis supplied). This Court in *Reifel* concluded that the record did not suggest that an emergency existed, an indication that the court believed that appellant had "sufficient time in which to stop" and, therefore, the general duty of care and control—and not the assured clear distance ahead rule—was applicable.

The next case in which both instructions were approved was this court's opinion in *Stacy v. Thrower Trucking, Inc.*, 253 Pa.Super. 150, 384 A.2d 1274 (1978). Though this case was later relied upon by a number of decisions for the proposition that, in certain circumstances, it is proper to charge on both the assured clear distance ahead and the sudden emergency doctrine, *see, e.g., Potenburg v. Varner, supra* 284 Pa.Super. at 22, 424 A.2d at 1372, the *Stacy* court, in fact, reached no such conclusion. Rather, the issue addressed was based on appellant's claim that appellee's own testimony established that appellee had operated his vehicle in a negligent manner and thus he could not be protected by the sudden emergency doctrine. *See: Stacy v. Thrower Trucking, Inc., supra* 253 Pa.Super. at 157, 384 A.2d at 1278. The appellant did not challenge the assured clear distance ahead charge and this court did not address the issue although the charge was improperly given, since an over-turned cement mixer truck sliding across four lanes of traffic is hardly "static" or "essentially static". The complexity of the issue is further revealed in *Potenburg v. Varner, supra*. While the court in *Stacy* confined its statement of the law to "this situation", *Stacy v. Thrower Trucking, Inc., supra* at 159, 384 A.2d at 1279, this Court in *Potenburg*, cited the rule as universally applicable:

Where the facts do not conclusively establish the existence of a sudden emergency, it is proper to charge the jury on both the assured clear distance rule and the sudden emergency doctrine in order that the jury has the applicable law to apply to the facts as they find them. *Stacy v. Thrower Trucking, Inc., supra.*

*Potenburg v. Varner, supra* 284 Pa.Super. at 22, 424 A.2d at 1372. Thus it is that we arrive at *Papandrea v. Hartman*. Though our cases have repeated that the assured clear distance ahead rule and the sudden emergency doctrine are generally mutually exclusive instructions, *see McKee by McKee v. Evans, supra* 380 Pa.Super. at 150 n. 5, 551 A.2d at 274 n. 5; *Elder v. Orluck, supra* 334 Pa.Super. at 341–45, 483 A.2d at 481–82; *Brown v. Schriver, supra* 254 Pa.Super. at 473–77, 386 A.2d at 48–49, the two instructions are often included in the same jury charge. Thus, it merits emphasis that the situations are relatively rare in which both charges may properly be given.

The more effective manner of explanation is, perhaps, to rely upon a hypothetical:

■ Generally, in an intersectional accident, "the application of the assured clear distance ahead rule depends on whether the vehicle proceeding into the intersection arrived in the lane at a point outside of or within an approaching motorist's assured clear distance ahead." *Unangst v. Whitehouse, supra* 235 Pa.Super. at 467, 344 A.2d at 700.[5] The facts of the instant case present a breed of intersectional automobile accident familiar to any driver—both drivers almost simultaneously enter the intersection from perpendicularly-situated roads, and both claim they did so because they had the green light.[6] If this specific factual scenario exists, the jury cannot be charged on the assured clear distance ahead rule.

---

Two cars are traveling in the same direction on a one-lane highway. The car in front, car A, abruptly stops and is rear-ended by the second car, car B. The driver of car A claims that a deer ran in front of her car creating a sudden emergency to which she reasonably responded under the circumstances. The driver of car B claims that the deer did not come anywhere near A's vehicle and it was driver A's negligence which caused the accident. Driver A in turn claims that driver B was following too closely and it was this negligent act which caused the accident.

In this hypothetical, the facts do not conclusively establish the existence of an emergency. The jury would first have to determine if such an emergency existed which would protect driver A by the application of the sudden emergency doctrine. The jury would then have to determine if driver B was in violation of the assured clear distance rule by following too closely to a car traveling in the same direction, an essentially static object.

The hypothetical, therefore, contains the necessary elements for both instructions to be given: (1) a claim by one driver that she reacted to a sudden emergency where reasonable minds may differ as to whether an emergency actually existed, and (2) the element which inspires this entire discussion, namely, a situation in which it must be determined if one driver should have been capable of stopping within the assured clear distance of a static or essentially static object.

5. In affirming the trial court's jury instruction of the assured clear distance ahead, the court in *Unangst v. Whitehouse* emphasized that the record did not undeniably indicate that a sudden emergency existed.

6. The concurring statement quite perceptively voices concern that (1) since the term "intersection" is used in section 3361 of the Vehicle Code, and (2) since "[a]n intersection is an inherently more dangerous stretch of road than others because of the possibility that vehicles approaching the intersection may have to stop suddenly when another vehicle fails to yield the right of way", it follows that the assured clear distance ahead rule is applicable to intersections. The concern is expressed in such persuasive fashion that it seems prudent to express the bases for pause in sharing the concern. Firstly, when the text of section 3361 is read in its entirety, it is evident that the requirement that a driver "shall operate at a safe and appropriate speed when

In such a circumstance the driver *has already mentally cleared the distance ahead* and the sudden interjection of an instrumentality within the range thereof is not within the specific duty imposed by the [assured clear distance ahead] rule.

*Unangst v. Whitehouse, supra* at 465, 344 A.2d at 699 (emphasis supplied). Thus, it was error to charge the jury on the assured clear distance rule.[7] Given the facts of this case, there exists the possibility that the decision of the trial judge to instruct the jury on the assured clear distance ahead rule confused, rather than clarified, the issues for the jury. Since the erroneous charge may have substantially[8] affected the verdict, we are constrained to reverse and remand for a new trial.

Order vacated. Case remanded for new trial. Jurisdiction relinquished.

## HOFFMAN, J., files a concurring statement.

approaching and crossing an intersection" is to be *in addition to* the assured clear distance ahead requirement. *See:* 75 Pa.C.S. § 3361 ("Consistent with the foregoing...."). Secondly, the notion that the assured clear distance ahead rule applies to all intersections overlooks the distinction between those roads which are regulated by traffic lights and those which are not, a distinction which has caused this Court to observe that the driver's duty in a traffic light-regulated intersection is not heightened, but limited.

> To hold that there is the same degree of care imposed upon a motorist with a favorable light as one without any right of way would thwart the purpose of traffic lights to facilitate the flow of traffic. *Escher v. Pittsburgh Railways Co.*, 194 Pa.Super. 66, 71, 166 A.2d 537, 540 (1960).

7. Appellants voiced their objection to this instruction both before and after it was given.

8. The author acknowledges that his dissenting thoughts in *Saylor v. Rose*, 319 Pa.Super. 560, 466 A.2d 686 (1983), afford a basis for a charge of inconsistency—but would assert there is insufficient evidence for conviction of such a display.

248

HOFFMAN, Judge, concurring:

I applaud the majority's scholarly efforts to clarify the application of the "assured clear distance ahead rule" and to delineate its interrelationship with the "sudden emergency doctrine." I also agree with the majority that the assured clear distance rule is inapplicable to the instant case and, therefore, I agree with the majority's grant of a new trial to appellant. However, I write separately to indicate my disagreement with the majority's characterization of the rule as it applies to intersections and laterally moving vehicles generally.

In footnote four, the majority correctly points out that there has been a tendency, sometimes erroneously, to give a jury instruction concerning assured clear distance ahead simply because a jury instruction is requested regarding sudden emergency. The general rule, as stated by the majority, is that the two doctrines are mutually exclusive. However, in its discussion of *Reifel*, I believe the majority errs in its suggestion that the assured clear distance ahead rule does not apply to perpendicularly positioned vehicles at intersections. The majority states that the assured clear distance instruction was inappropriate in *Reifel*, as "[f]irst, the rule applies only to static or essentially static objects, it was inapplicable to this situation in which the vehicles were in motion and were perpendicularly positioned."

Initially, I note that the statute specifically makes reference to the application of the assured clear distance rule to intersections. 75 Pa.C.S. § 3361 provides: "Consistent with the foregoing, every person shall drive at a safe speed when approaching and *crossing an intersection....*" Thus, the statute clearly contemplates the application of the rule to intersections, where some vehicles are traveling in a perpendicular direction relative to each other. Moreover, in *Unangst*, which the majority relies upon, the court clearly stated that the assured clear distance rule can apply to intersections where the vehicles were both in motion and traveling in a perpendicular fashion. *Unangst*, at 466, 344 A.2d at 699.

The *Unangst* Court, in its discussion of *Enfield v. Stout,* 400 Pa. 6, 161 A.2d 22 (1960), explained the reason for the application of the rule to this situation as follows:

> The fact that the obstacle was moving in *Enfield* does not necessarily indicate that "moving" objects are included within the rule. It must be noted that the object in that case, a truck, was moving *across* the intersection and in the path of an oncoming car. This lateral movement, from the point of view of the calculation of time-distance, is of little moment. The truck in *Enfield* was essentially a static object because its movement did nothing to reduce the assured clear distance ahead for the the oncoming car.

*Id.* 235 Pa.Super. at 466, 344 A.2d at 700. This characterization of a vehicle traveling across an intersection as akin to a static object is a sensible legal fiction as regards the assured clear distance ahead rule, because it is consistent with the purpose of the rule. The purpose of the rule is to ensure that "such control be maintained as will enable a driver to stop and avoid obstructions that fall within his vision." *Mickey v. Ayers,* at 517–18, 485 A.2d at 1202 (quoting *Unangst* at 463, 344 A.2d at 698). An intersection is an inherently more dangerous stretch of road than others because of the possibility that vehicles approaching the intersection may have to stop suddenly when another vehicle fails to yield the right of way. The Pennsylvania Supreme Court has stated in this regard:

> While the driver of an automobile on a through highway may properly assume that one approaching that highway on a stop street will perform his legal duty to stop and yield the right of way . . ., still the right-of-way on a through highway is a qualified one and the driver of an automobile thereon must take precautions in regard to the control and speed of his car and keeping alert lookout for cars approaching the intersection as a reasonable prudent man solicitous of his own safety.

*Enfield* 400 Pa. at 12, 161 A.2d at 25. Thus, I believe that the majority's statement regarding the application of the assured clear distance ahead rule to moving vehicles at intersections,

250

to be unsupported by our caselaw and to fail to adequately address the cogent reasoning of *Enfield* and *Unangst.*