**Bette SEHL and Carl Sehl, h/w, Appellants,**

v.

**VISTA LINEN RENTAL SERV. INC. and Delaware Valley Linen Service, Inc., t/a D.C.L. and/or Delaware County Linen, Appellees.**

Superior Court of Pennsylvania.

Argued Nov. 16, 1999.

Filed Nov. 6, 2000.

Reargument Denied Jan. 4, 2001.

Ruben Honik, Philadelphia, for appellants.

William J. McKee, Philadelphia, for appellees.

Before McEWEN, President Judge, STEVENS and ORIE MELVIN, JJ.

ORIE MELVIN, J.:

¶ 1 Appellants, Betty and Carl Sehl, appeal from the judgment entered in the Court of Common Pleas of Philadelphia County following the denial of their motion for post-trial relief. Appellants challenge the trial court's preclusion of certain testimony on hearsay grounds, its charge concerning successor liability, and the inadequacy of the verdict. We affirm.

¶ 2 The procedural background and relevant facts may be summarized as follows. Mrs. Sehl while working as a waitress at the Scanlon Family Restaurant slipped and fell on a wet rug, which had been laundered and delivered by Appellee, Vista Linen Rental Service, Inc. (Vista). Mrs. Sehl sustained a fractured right wrist, which required surgery to repair. Subsequent to the accident, Vista went out of business and Appellee Delaware Valley Linen Services t/a D.C.L. and/or Delaware County Linen (DCL) began providing linen services to the restaurant. Appellants instituted a trespass action alleging the negligent maintenance of the rug by Vista caused Mrs. Sehl's injuries. The Appellants further alleged DCL was a successor in interest to Vista and thus liable for the prior negligent acts of Vista. After a three-day trial, the jury returned a verdict in favor of the Appellants and against Vista only and awarded damages in the amount of sixty-two thousand dollars ($62,-000.00). The jury determined by way of

special interrogatory that DCL was not liable as a predecessor in interest to Vista. After denying the Appellants post-trial motions, judgment was entered on the verdict. This appeal followed.

¶ 3 On appeal Appellants assert entitlement to a new trial on the basis the trial court erred in precluding certain testimony of Tom Scanlon; in charging the jury regarding successor liability; and in refusing to set aside the verdict as inadequate.

¶ 4 Initially, we note the standard for reviewing the trial court's denial of a motion for a new trial is whether the trial court clearly and palpably abused its discretion or committed an error of law that affected the outcome of the case. *Chanthavong v. Tran,* 452 Pa.Super. 378, 682 A.2d 334, 337 (1996) (citing *Melso v. Sun Pipe Line Co.,* 394 Pa.Super. 578, 576 A.2d 999 (1990), *appeal denied,* 527 Pa. 667, 593 A.2d 842 (1991)). Discretion is abused when the trial court misapplies the law or when it reaches a manifestly unreasonable, biased or prejudiced result. *Id.* at 338 (citation omitted).

¶ 5 In their first issue Appellants assert error in precluding certain testimony from Tom Scanlon, the owner of Scanlon's Restaurant. Specifically, Appellants claim Mr. Scanlon's proposed testimony regarding statements made by the carpet delivery person to him that Vista had been told to "change its name" because it was "taken over" by DCL should have been admitted as a hearsay exception pursuant to Pa.R.E. 803(25)(D).

¶ 6 This issue presents this Court with its first opportunity to examine the application of Rule 803(25)(D), which represents a new exception to the hearsay rule regarding admissions by a party opponent under the recently codified Pennsylvania Rules of Evidence. Rule 803 in relevant part, provides:

### Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial.

The following statements, as hereinafter defined, are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \*

**(25) Admission by a Party Opponent.** The statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity, or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by a party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

¶ 7 Mr. Scanlon testified that the week after the accident when the delivery person for Vista made his next regular delivery he informed him about Mrs. Sehl's fall on the wet rug. Mr. Scanlon was precluded from further testifying that one of the delivery persons told him Vista had been told to "change its name to DCL" because it was "taken over" by DCL. Later testimony reflected the only persons who could have made such statements were either Patrick O'Rourke, owner of Vista, or Al Kinworthy, an employee of DCL, while they were delivering rugs to Scanlon's Family Restaurant as part of DCL's regular laundry service to the restaurant. N.T. 12/22/98 at 215–216.

¶ 8 The trial court excluded the statements due to the Appellants' "inability to positively identify the declarant. . . ." Trial Court Opinion, 6/23/99, at 4. The trial court further opined:

Without the identity of the declarant, this Court is unable to determine whether the declarant was indeed a person authorized to make the statement under subsection (C) or an agent under subsec-

tion (D).... Even if the court were to assume that the declarant was a driver for DCL, it does not logically follow that the statements made by the driver were within the scope of the driver's agency or employment. There was no evidence or offer of proof that the driver for a linen service would have as part of his job description the authority to issue such statements.

*Id.* at 4–5. Appellants' argue the trial court improperly excluded this evidence by applying the traditional vicarious admission rule, which is now codified in clause (C) of Rule 803 requiring the agent to have "speaking authority," rather than the less restrictive rule provided for in clause (D). Whether the trial court based its decision on Rule 803(25)(C) or (D) is of no moment as appellants have failed to satisfy their burden under either rule.

■ ¶ 9 Under Pa.R.E. 803(25)(D) in order for the statements to be admissible the proponent must establish three elements: (1) the declarant was an agent or employee of the party opponent; (2) the declarant made the statement while employed by the principal; and (3) the statement **concerned a matter within the scope of the agency or employment.** Here, Appellants' proffer failed to satisfy the third element. Merely because the agent made the statement **while performing** within the scope of his employment does not satisfy the requirement that the statement also **concerns a matter** within the scope of the employment. The difference between clause (C) and (D) of Rule 803(25) is aptly described in the following commentary on the corresponding federal rule:

> Previously courts applied the traditional agency test in determining admissibility of statements by agents or servants, i.e., whether the particular statement was authorized by the principal. Courts generally decided that damaging statements were not within the scope of authority, even of relatively high level employees. The obvious difficulty with applying strict agency principles is that

agents or servants are very rarely authorized to make damaging statements—the truck driver is hired to drive, not to talk. However as a result of the fact that it also seemed unreasonable to deny admission to inculpatory statements by the driver about the driving he was hired to do in light of the probable reliability of such statements, courts often stretched to find a basis for admissibility. In recognition of the reliability and reasonableness of admitting such statements, Rule 801(d)(2)(D) now declares statements of an agent or servant concerning a matter within the scope of his agency or employment to be defined as not hearsay if made during the existence of the relationship. Authority to speak is thus no longer of concern; all that is required [in addition to proof of agency] is that the statement concern a matter within the scope of the agency or employment, and that the agent or servant still be employed at the time of making the statement.

Michael H. Graham, *Handbook of Fed. Evid.* § 801.23 (4th ed.1996) (emphasis added). Moreover, as noted in *McCormick on Evidence* the modern approach under federal rule 801(d)(2)(D) "allows in statements from **a well-informed source,** with the continuing employment relationship as a guarantee of trustworthiness." E. Cleary, *McCormick on Evidence* § 267 at 641 (2d ed.1972) (emphasis added).

■ ¶ 10 We recognize that clause (D) of Pa.R.E. 803(25) broadens the "traditional" rule embodied by clause (C) and thus specific authorization to speak need not be shown; nonetheless, the statement must still concern a subject matter within the declarant's scope of employment or agency. *See Vojas v. K mart Corp.*, 312 Ill. App.3d 544, 245 Ill.Dec. 144, 727 N.E.2d 397 (2000) (holding the principal's grant of authority to speak is not the main concern in applying the party-admission exception to the hearsay rule; instead, the test is whether the statement concerns matters within the scope of the employment);

*Lane v. City of Kotzebue,* 982 P.2d 1270, 1273 (Alaska 1999) (stating "An employee's statements, to be admissible as nonhearsay admissions of party-opponent, do not have to be authorized by the employer; it is enough that they concern the employees' duties."). Applied instantly, a delivery person's scope of employment does not ordinarily involve participation in, or even knowledge of, the merger or acquisition negotiations of his employer. Moreover, it is the proponent of the statement who bears the burden of establishing the declarant's scope of employment. Here, the Appellants have failed to meet their burden, as they could not even identify who the speaker was let alone whether the statements concerned a matter within the scope of his responsibilities. To admit the instant testimony without a proper showing that the statement concerns matters within the scope of the declarant's employment would invite every rumor or innuendo spread within the workplace to come in as an admission against the employer even though the speaker has not acquired knowledge of the subject matter about which he speaks as part of the duties of his employment. This of course would undermine the premise of trustworthiness upon which the rule is based.

¶ 11 Proper application of this exception can best be illustrated by the following example. At the scene of a serious traffic accident between a vehicle and a taxicab the taxi driver admits to the investigating officer that he caused the accident by running a red light. At trial the injured party would be permitted pursuant to Rule 803(25)(D) to admit the statement against the taxicab company because the driver's statement concerns his operation of the taxi, the function for which he was hired. However, if the taxi driver makes a statement that taxi company A is really owned by taxi company B the statement would not be excepted to the hearsay rule as a vicarious admission of the taxi company, because that subject is not within the scope of the driver's duties. Accordingly,

we find the trial court did not err in excluding this testimony.

¶ 12 Appellants next claim trial court error in its charge to the jury regarding successor liability. In reviewing the propriety of a jury charge, we must determine whether the court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. *Dickens v. Barnhart,* 711 A.2d 513 (Pa.Super.1998) (citations omitted), *appeal denied,* 556 Pa. 709, 729 A.2d 1129 (1998). In so doing we look at the charge in its entirety against the background of evidence in the case to determine whether error was made and whether it was prejudicial. *Id.* An alleged inadequacy in jury instructions will also constitute trial error if the jury was probably misled by what the trial judge said or there is an omission in the charge which amounts to a fundamental error. *Cannon v. Tabor,* 434 Pa.Super. 232, 642 A.2d 1108, 1110 (1994). The primary duty of the trial judge in charging the jury is to clarify the legal principles involved so that the jury may comprehend the questions that it must decide. *Id.* at 1111. The trial judge is bound to charge only on the law applicable to the factual parameters of a particular case. *McKee by McKee v. Evans,* 380 Pa.Super. 120, 551 A.2d 260, 272 (1988) (*en banc*), *appeal denied,* 522 Pa. 604, 562 A.2d 827 (1989).

¶ 13 As a general rule, a successor corporation does not acquire liabilities and/or debts of its predecessor. *Bostick v. Schall's Brakes and Repairs, Inc.,* 725 A.2d 1232 (Pa.Super.1999). However, a number of exceptions exist. Specifically, the general rule does not apply and liability attaches to the successor when one of the following is shown:

(1) The purchaser expressly or impliedly agrees to assume such obligation; 2) The transaction amounts to a consolidation or merger; 3) The purchasing corporation is merely a continuation of the selling corporation; 4) The transaction is fraudulently entered into to es-

cape liability; 5) The transfer was not made for adequate consideration and provisions were not made for the creditors of the transfer; and, 6) The successor undertakes to conduct the same manufacturing operation of the transferor's product lines in essentially an unchanged manner. The successor is then strictly liable for injuries caused by defects in the product line, even if previously manufactured and distributed by the transferor. [This has been labeled the product-line exception.]

*Childers v. Power Line Equipment Rentals*, 452 Pa.Super. 94, 681 A.2d 201, 212 (1996) (citation omitted). Appellants assert the trial court erred by refusing to charge on exceptions two, three and four. We disagree. Our review reveals insufficient evidentiary foundation to support instructions on those exceptions. Accordingly, the trial court did not err in refusing the requested instructions.

¶ 14 Appellants also contend the trial court erred in its charge on the adequate consideration exception to successor liability. On this subject the trial court stated that "adequate consideration is one which is equal or reasonably proportioned to the value of that for which it is given." N.T., 12/23/98, at 132–135. We note this description of adequate consideration is identical to the definition provided by our Supreme Court in *Estate of Beck*, 489 Pa. 276, 414 A.2d 65, 69 (1980). Thus, we find the trial court did not abuse its discretion in charging the jury on adequacy of consideration, as it sufficiently clarified the legal principle involved.

¶ 15 Finally, Appellants assert the trial court erred in failing to set aside the award of damages as inadequate. Appellants argue a new trial is warranted because the damages awarded bear no reasonable relation to the loss suffered by the plaintiff. Specifically, Appellants note the parties stipulated that special damages were $48,804.17 thus they claim a verdict of $62,000.00 is inadequate, as it reflects a pain and suffering award of only 22% of the stipulated damages.

¶ 16 It is well settled that our standard in reviewing a trial court's decision that damages were adequate is extremely narrow:

[The] duty of assessing damages is within the province of the fact-finder and should not be interfered with unless it clearly appears that the amount awarded resulted from partiality, caprice, prejudice, corruption or some other improper influence. Generally, a verdict will not be disturbed merely on account of the smallness of the damages awarded or because the reviewing court would have awarded more. [T]o support the granting of a new trial for inadequacy, the injustice of the verdict should stand forth like a beacon. So long as the verdict bears a reasonable resemblance to the damages proved, it is not the function of the court to substitute its judgment for that of the jury. Moreover, [t]he grant of a new trial because of inadequacy of the verdict is a matter peculiarly within the competence of the trial court, and its discretion is considerable. Its action, therefore, will not be disturbed on appeal except where there has been a clear abuse of discretion.

*Cooley v. Jefferson Bank*, 355 Pa.Super. 1, 512 A.2d 713, 714–715 (1986) (citations and internal quotation marks omitted).

¶ 17 Our review of the evidence fails to disclose that the jury's verdict was the product of partiality, prejudice, corruption or other improper influence. The evidence revealed the distal radial fracture of Mrs. Sehl's wrist was stabilized by the insertion of pins and placed in a cast for six weeks. This fracture healed well; however, Mrs. Sehl continued to experience pain on the opposite side of her wrist. It was then discovered Mrs. Sehl had suffered a non-union of her ulnar styloid fracture accompanied by a mild case of carpal tunnel syndrome. Another surgery was performed to repair these conditions and Mrs. Sehl was placed in a cast for another

six weeks. After the cast was removed Mrs. Sehl underwent a course of physical therapy. Her last visit with her doctor was in August of 1997 at which time he noted she had regained full range of motion and was doing quite well. He therefore released her to return to work on a full-time basis and told her to return if she experienced any problems. Subsequent to her release Mrs. Sehl never made any complaints to the doctor of residual pain or other difficulty with her wrist. In light of the evidence and our guiding principles, we cannot conclude that the jury's award of approximately $11,200.00 in non-economic damages is so unreasonable and inadequate as to warrant the grant of a new trial. Accordingly, we find the trial court did not abuse its discretion in refusing a new trial on this basis.

¶ 18 Judgment affirmed.

¶ 19 STEVENS, J., files a Dissenting Opinion.

STEVENS, J., dissenting:

¶ 1 I respectfully dissent from the Majority's conclusion that Mr. Scanlon's proffered testimony is inadmissible under Pa. R.E. 803(25)(D). In determining whether the statements qualified as an admission by a party opponent, the trial court interpreted Pa.R.E. 803(25)(D) according to the traditional rule of vicarious admission. (Trial Court Opinion dated 6/24/99 at 4–5). Under the traditional rule, hearsay statements by a party's agent may be offered in evidence against him, if it is established that the agent had authority to make the statement. Accordingly, the trial court excluded the statements because it found no evidence of authority for the alleged declarant to make the statements.

¶ 2 The Majority is correct in finding that under Pa.R.E. 803(25)(D), Appellants need not prove the declarant was authorized to speak on behalf of DCL, but prove only that (1) the declarant was an agent or employee of the party against whom the statement was offered; (2) the declarant

made the statement while he was an agent or employee; and (3) the statement concerned a matter within the scope of the declarant's agency or employment. However, I disagree with the Majority's conclusion that Mr. Scanlon's testimony is inadmissible because it does not satisfy the third step in the analysis; that is, Mr. Kinworthy's statements do not concern a matter within the scope of his employment.

¶ 3 Mr. Kinworthy was DCL's delivery person. The undisputed testimony of Mr. Kinworthy was that Mr. Marsero, the president of DCL and the brother-in-law of Mr. Kinworthy, instructed Mr. Kinworthy to jointly service Vista Linen's accounts including Scanlon in order to "take over" their accounts. Albert Kinworthy's Deposition at 12–14, 17–18. He was instructed to use Vista Linen billing letterhead or "receipt" forms to obtain payments for DCL. Kinworthy's Deposition at 12–14. On those forms, the name "Vista Linen" was scratched out and Delaware Valley Linen was substituted with Delaware Valley's phone number and the name "Vince" (referring to Vince Marsero). Plaintiffs' Exhibit 2. The precluded statements that Vista had been told to "change its name" because it was "taken over" by DCL directly concerned Mr. Kinworthy's duties. *Lane v. City of Kotzebue,* 982 P.2d 1270, 1273 (Alaska 1999) ("An employee's statements, to be admissible as nonhearsay admissions of party-opponent, do not have to be authorized by the employer; it is enough that they concern the employee's duties.").

¶ 4 Contrary to the Majority's conclusion, Mr. Kinworthy need not participate in, or have knowledge of, the merger or acquisition negotiations of his employer in order for his statements to be deemed sufficiently trustworthy for admissibility. The federal rule of evidence upon which Pa.R.E. 803(25)(D) is based does not require that the declarant have personal knowledge of the facts underlying his statements. See F.R.E. 801(d)(2) & Advisory Committee note ("No guarantee of

trustworthiness is required in the case of an admission. .... Admissions have enjoyed [freedom] from ... restrictive influences of the opinion rule and the rule requiring first-hand knowledge."). The majority of courts, including the Third Circuit, have not read a personal knowledge requirement into the vicarious admissions branch of F.R.E. Rule 801(d)(2). *See Union Mutual Life Insurance, Co. v. Chrysler Corp.*, 793 F.2d 1, 8–9 (1st Cir.1986); *United States v. Ammar*, 714 F.2d 238, 254 (3rd Cir.1983); *MCI Communications Corporation v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1143 (7th Cir.); *Mahlandt v. Wild Canid Survival & Research Center*, 588 F.2d 626, 630–631 (8th Cir.1978); *In Re A.H. Robins Co.*, 575 F.Supp. 718, 723–725 (D.C.Kan.1983).[1] Accordingly, I would find that Mr. Kinworthy's statements were within the scope of his duties as DCL's delivery person, and thus he could acquire knowledge of the subject matter about which he spoke.

¶ 5 I further disagree with the Majority's conclusion that the statements in controversy were not admissible because of Appellants' inability to identify dispositively the declarant in this case. Both the Appellants and the Appellee state in their briefs that the statements were made by either Mr. Kinworthy of DCL or Mr. O'Rouke of Vista.

¶ 6 Appellee contends that if the statements were made by Mr. O'Rourke, they would be inadmissible against DCL because Mr. O'Rourke is the principal of Vista. "Where two or more parties are joined, the admission of one party may be inadmissible hearsay as to the other party." Packel and Poulin, Pennsylvania Evidence, Section 805.1(c), at 657 (1987).

¶ 7 The fact that Mr. O'Rourke was the principal of Vista does not mean *ipso facto* that Mr. O'Rourke was not also acting as an agent of DCL. Under Pennsylvania law, an agency relationship can be created under the doctrine of apparent authority. "Apparent authority exists when the principal, by words or conduct, leads people with whom the alleged agent deals to believe that the principal has granted the agent the authority he purports to exercise." *Volunteer Fire Co. of New Buffalo v. Hilltop Oil Co.*, 412 Pa.Super. 140, 602 A.2d 1348, 1353 (1992). "The third party can rely on apparent authority of agent when this is a reasonable interpretation of the manifestations of principal." *Bolus v. United Penn Bank*, 363 Pa.Super. 247, 525 A.2d 1215, 1222 (1987). The record is clear that Mr. Scanlon believed that Mr. O'Rourke was an agent of DCL. Indeed, Mr. Scanlon testified that he continued to use DCL at all times believing them to be "the same people as Vista." N.T. 12/22/98 at 34–35. Under the doctrine of apparent authority, we look to the acts of DCL's principal, Mr. Marsero, in his dealings with Mr. Scanlon to determine whether Mr. Scanlon's belief was reasonable. *Id.*

¶ 8 The record indicates that the restaurant employed Vista to provide linen service during the time Mr. Scanlon managed the restaurant. N.T. 12/22/98 at 7. Mr. Scanlon testified that he could identify Mr. O'Rourke and knew that he was the owner of Vista. N.T. 12/22/98 at 43–45. In June of 1996, Mr. Scanlon noticed that DCL began servicing Scanlon's linen. However, Mr. Marsero did not notify Scanlon's that DCL was a new or different business that was taking over Vista's account. N.T. 12/22/98 at 189–190. Mr. Marsero testified that he continued to service Scanlon's and other Vista customers without interruption and in the same manner as they had been serviced before. N.T. 12/22/98 at 34, 152–153, 189. He also testified that he recognized the importance of adequate and continuous service in order to acquire Vista's accounts. N.T. 12/22/98 at 176. Mr. Marsero agreed that Mr. O'Rourke would accompany DCL's driver to each of Vista's

---

1. The one exception is *Litton Systems, Inc. v. American Tel. and Tel. Co.*, 700 F.2d 785, 816–817 (2nd Cir.1983).

customers, including Scanlon's, in an effort to salvage the accounts for DCL. N.T. 12/22/98 at 215–216, 221. Based on Mr. Marsero's conduct, considered along with surrounding circumstances, it was reasonable for Mr. Scanlon to believe that Mr. O'Rourke was an agent of DCL. Accordingly, Mr. O'Rourke was an agent of DCL under the doctrine of apparent authority.

¶ 9 As such, I would find the statements in controversy, if spoken by Mr. O'Rourke, are admissible hearsay admissions against DCL, because they were made during the scope of his agency relationship with DCL. As Mr. O'Rouke did participate in the merger or acquisition negotiations with Mr. Marsero, there can be little doubt that the statements concerned a matter within the scope of his agency relationship with DCL.

¶ 10 Had the trial court not precluded Scanlon's testimony, an evidentiary foundation would have been laid to support a charge by the trial court to the jury as to successor liability, which is Appellants' second issue on review. Appellants argue that the trial court erred in failing to charge the jury as to three exceptions to the Commonwealth's general rule that a successor company does not acquire the liabilities of the transferor's assets. The exceptions are as follows: When a company sells or transfers its assets to another company, the successor company does not acquire the liabilities of the transferor's assets, unless

(1) The sale transaction is, in effect, a consolidation or merger.

(2) The successor corporation is merely a continuation of the transferor corporation.

(3) The transaction is fraudulently entered into in order to escape liability.

*Dawejko v. Jorgensen,* 290 Pa.Super. 15, 434 A.2d 106, 107–108 (1981)

¶ 11 The agent's statements to Mr. Scanlon that Vista was told to "change its name" to DCL because Vista was being "taken over" by DCL, considered with oth-er evidence adduced at trial, provides the evidentiary foundation for the charges of these three exceptions. *Lockhart v. List,* 542 Pa. 141, 148, 665 A.2d 1176, 1179 (1995) (holding that in reviewing a jury instruction, this Court must review the entire instruction and look at all the evidence on the record to determine whether there was error and whether that error prejudiced the complaining party).

¶ 12 For all of the foregoing reasons, I would reverse, without reaching Appellants' final issue regarding damages.