## Feeney v. Authentic Fitness Co.

*Marvin W. Factor,* for plaintiff.
*Alan W. Ross,* for defendant.

TEMIN, *J.,* February 15, 2001—For the reasons stated in the attached amended findings of fact and conclusions of law, the court finds that the plaintiff's post verdict motion was properly denied.

## AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

And now, February 15, 2001 the court enters the attached amended findings of fact and conclusions of law, incorporating herein the findings of fact and conclusions of law entered on April 20, 2000, as the opinion of the court.

## PROCEDURAL HISTORY

(1) This action was commenced on June 30, 1994, by plaintiff against defendants Authentic Fitness Company and Gold Medal Sporting Goods Inc. in which plaintiff claimed that defendants were liable to him as the manu-

facturer and seller of a pair of defective goggles under section 402A of the Restatement of Torts.

(2) On February 27, 1996, defendant Gold Medal filed a cross-claim for indemnity against defendant Authentic Fitness.

(3) Prior to trial, plaintiff entered into a joint tort-feasor agreement with defendant Authentic Fitness in which Authentic Fitness agreed to pay plaintiff $1.5 million dollars. The agreement provided, inter alia:

"Payee does hereby agree to satisfy any claim or judgment ultimately recovered by payee or by any other person, firm or corporation against any party herein released for contribution or indemnification by satisfying such percentage of any claim or judgment against the payor as the negligence or fault of the payor bears to all causal negligence or fault of all tort-feasors or obligors having liability by reason of the occurrence, and to that end, the payee agrees to indemnify and save harmless payor and payor's agents, representatives and insurers herein, from all liability, damage, cost and expense of every kind and nature, including counsel fees, from further liability to payee or any other person, corporation or entity making claim for contribution or indemnification arising out of the damages allegedly incurred by payee."

(4) The case was first tried beginning on October 6, 1997 before the Honorable Sandra Mazer Moss, who bifurcated the indemnity claim from the remaining claims. At the close of the evidence, pursuant to agreement of counsel, only two interrogatories were submitted to the jury, to wit:

"(a) Were the goggles defective, and,

"(b) Was the defect a substantial factor in causing the plaintiff's injuries."

(5) The jury answered yes to both interrogatories and awarded plaintiff $11,884,000 in damages.

(6) The remaining issues in the case were listed for trial before this court on April 13, 2000. The parties agreed that the trial would be non-jury. Most of the evidence at this trial was submitted by way of counsel reading page designations into the record from plaintiff's interrogatories, depositions and the original trial. The plaintiff also testified.

(7) It was agreed that the issues to be decided by this court were:

"(a) Was Authentic Fitness the manufacturer of the goggles?

"(b) Was Gold Medal the seller of the goggles?

"(c) If Gold Medal was liable in damages to plaintiff, was Gold Medal entitled to indemnity from Authentic Fitness for any amount of those damages?"

## FINDINGS OF FACT

(8) The evidence adduced at trial proved the following:

"(a) The goggles in question were purchased by the plaintiff from Gold Medal.

"(b) The package which contained the goggles indicated that they were 'Speedo' goggles and that they were 'anti-fog.' The packaging also indicated that the manufacturer was 171173 Canada Inc.

"(c) 171173 Canada Inc. was another name for Tilbes Manufacturing which was acquired by Speedo sometime in 1986.

"(d) Speedo and Authentic are one and the same entity.

"(e) Authentic Fitness manufactured the goggles, had the box printed, was responsible for the wording on the box, and also the insert that came with the goggles.

"(f) On the date when he purchased the goggles, plaintiff went into the store and asked the clerk if they had water-skiing goggles. The clerk replied, 'Yes,' and pointed to an area, 'where they were.' Plaintiff selected the highest priced goggles on the rack because they were, 'better quality.' He further testified as follows:

"He was ringing up the price, and he had asked me where I water-ski, and I told him, and he asked me if I was familiar with the slalom course, and I said yes, and I asked him about the water-skiing goggles, and I explained my situation with wearing contacts, . . .

"I mentioned water-skiing goggles. I explained my situation about trying to keep the water out, and he said they would work fine. They fit tight and keep the spray from getting into the eyes." (N.T. 4/13/99, pp. 46-48.)

"(g) There was no other discussion with the clerk.

"(h) There was never any discussion with an employee of Gold Medal concerning the 'anti-fog' quality of the goggles.

"(i) The defect found by the jury in the trial in the part of the case that was tried before Judge Moss was that the goggles fogged up and did not live up to their 'anti-fog' claim, causing the plaintiff to fail to observe an obstruction in the water and the warning signs given to him by people in the boat that was towing him.

"(j) Plaintiff has never claimed that the goggles were defective because they were not water tight.

"(k) Although in answers to interrogatories Mr. Steven J. Hall, general manager of Authentic Fitness of Canada Inc., identified the goggles as style 'Pro Plus A/F,' in his deposition he explained that he was mistaken because he could not see the design of the strap in the photograph he was given and that actually the goggles purchased by the plaintiff were 'Neotek' goggles which were very similar to the Pro Plus, but with a different style strap."

## CONCLUSIONS OF LAW

(1) Defendant Authentic Fitness was the manufacturer of the goggles that were the subject of this lawsuit.

(2) Defendant Gold Medal was the seller of the goggles that were the subject of this lawsuit.

(3) Defendant Gold Medal was merely a conduit for the transfer of the goggles from defendant Authentic Fitness to the plaintiff and therefore is only secondarily liable, whereas the defendant Authentic Fitness is primarily liable. *Sochanski v. Sears, Roebuck and Co.,* 689 F.2d 45 (3d Cir. 1982).

(4) The release by plaintiff of defendant Authentic Fitness pursuant to the joint tort-feasor agreement entered into between Authentic Fitness and plaintiff on September 30, 1997, operates as a release of any liability that defendant Gold Medal may have to plaintiff. *Id.*

(5) Although Judge Moss ruled that the statements the Gold Medal clerk made to plaintiff were inadmissible hearsay, this was no longer cognizable as "the law of the case" because of the change in the Rules of Evidence between the date of the trial before Judge Moss and the date of the trial before this court. *Sehl v. Vista Linen Rental*

*Service Inc.,* 763 A.2d 858 (Pa. Super. 2000); 42 Pa.C.S. Rule 803(25)(D). Therefore, this court did not err in admitting the statements of the clerk pursuant to Pa.R.E. 803(25)(D).

Therefore this court finds that Gold Medal Sporting Goods Inc. is not liable for any money damages to plaintiff Thomas Leo Feeney.