J.A22037/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GRACE PERRONE AND JULIO PERRONE, AN INCAPACITATED PERSON, BY ERIC PERRONE, HIS GUARDIAN, | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : | |
| v. | : : | |
| ROSE CITY HMA, INC., T/D/B/A LANCASTER REGIONAL MEDICAL CENTER, HEALTH MANAGEMENT ASSOCIATES, INC. D/B/A LANCASTER REGIONAL MEDICAL CENTER, HOSPITAL HOUSEKEEPING SYSTEMS, LTD, AND HOSPITAL HOUSEKEEPING SYSTEMS, LLC, | : : : : : : : : : | |
| Appellees | : | No. 1838 MDA 2013 |

Appeal from the Order Entered September 11, 2013
In the Court of Common Pleas of Lancaster County
Civil Division No(s).: CI-11-14933

BEFORE: PANELLA, SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED APRIL 10, 2015**

In this slip-and-fall case, Plaintiffs/Appellants Grace Perrone ("Appellant"[1]) and her husband Julio Perrone, an incapacitated person by his guardian, Eric Perrone, appeal from the order granting summary judgment in favor of Defendants/Appellees, Rose City HMA, Inc., T/D/B/A Lancaster

---

[*] Former Justice specially assigned to the Superior Court.

[1] For ease of discussion, we utilize the singular "Appellant" to refer to Grace only, and the plural "Appellants" for both Grace and Julio. The guardian, Eric Perrone, is Appellant Julio's son.

Regional Medical Center ("LRMC"), Health Management Associates, Inc. D/B/A Lancaster Regional Medical Center ("HMA"), Hospital Housekeeping Systems, Ltd., and Hospital Housekeeping Systems, LLC (the latter two collectively, "HHS"). Appellants raise five issues for our review:[2] four pertain to the trial court's findings that they failed to establish Appellees' floor-cleaning machine leaked the water which caused Appellant's fall and the fifth is a challenge to the court's exclusion of evidence on hearsay grounds. After careful review, we reverse the granting of summary judgment to Appellees LRMC and HHS. With respect to Appellee HMA, we vacate the award of summary judgment such that HMA may pursue its vicarious liability claim.

Appellant Julio was a patient at Appellee LRMC's hospital, and Appellant Grace was visiting him. "The parties agree that [Appellant] was a business invitee of" LRMC. Trial Ct. Op., 9/11/13, at 5. LRMC had an agreement with Appellee HHS for HHS to provide housekeeping services, which included cleaning and maintaining the elevators. LRMC owns cleaning machines, and both LRMC and HHS are responsible for maintaining them. *Id.* at 7.

On January 27, 2010, Appellant's sister, Ida Geib ("Sister"), arrived at the hospital to visit. Sister entered an elevator, along with two men in

---

[2] Appellants' statement of questions involved raises two issues, whereas the argument section of their brief is divided into five issues. *See* Pa.R.A.P. 2119(a) (requiring argument section to be divided into as many parts as there are questions to be argued).

uniform and a floor-washing machine. LRMC employee Linda Brown testified that the hospital has six floors, consisting of a ground floor and five numbered floors.[3] Sister disembarked on the third floor while the two men stayed on the elevator. Shortly thereafter, Sister and Appellant returned to the elevator together to leave the hospital; as we discuss *infra*, the length of time that Sister was away from the elevator is an issue in this appeal. The same elevator returned and there was no one in it. When Appellant entered the elevator, she slipped on water on the floor, fell, and sustained injuries. Two LRMC employees, Linda Brown and Ellen Poshefko, cleaned up the water and transported Appellant to the emergency room in the same elevator with a wheelchair.

On December 16, 2011, Appellants initiated this case by filing a writ of summons. On April 13, 2012, they filed a complaint, raising claims of negligence, and Appellant Julio raised a claim of loss of consortium claim. The parties conducted discovery, including depositions of the following individuals: Appellant, Sister, Brown, Poshefko, William Street, an HHS director who supervises HHS employees at LRMC, and Sheldon Cash, a regional vice president of HHS.

On July 2, 2013, all three Appellees filed separate motions for summary judgment, averring Appellants failed to produce sufficient evidence

---

[3] Dep. of Linda Brown, 7/20/11, at 25.

that the water on the elevator floor came from LRMC's machine or that they knew or should have known there was water on the floor. The trial court granted summary judgment in favor of all Appellees on September 11, 2013. Appellants filed a motion for reconsideration, but before the trial court ruled on it, they took this timely appeal on October 10th.[4]

At this juncture we summarize the trial court's findings as follows. **See** Trial Ct. Op., 9/11/13, at 8-13. Sister "was unable to estimate how much time had elapsed [from] when she got off the elevator and when she and [Appellant] got back . . . , or say whether anyone else had gotten on the elevator in her absence." **Id.** at 8. "No issues were reported to . . . HHS or [LRMC] regarding moving the scrubbing machines on the elevator **and the scrubbers were not known to leak**; however, [HHS director] Street and [HHS vice president] Cash acknowledged that water leaking from the machines was a possibility." **Id.** (emphasis added).

The court also considered LRMC employee Poshefko's testimony that

---

[4] **See Sass v. Am Trust Bank**, 74 A.3d 1054, 1062 (Pa. Super. 2013) (stating mere filing of petition for reconsideration of final order—without trial court's express grant of reconsideration—does not toll thirty-day period for appeal), *appeal denied*, 85 A.3d 484 (Pa. 2014).

Appellants also filed, as ordered by the trial court, a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. We note the statement is ten pages long and raises twelve enumerated issues, which are further divided into at least twenty subsections. We remind counsel that the 1925(b) "Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." **See** Pa.R.A.P. 1925(b)(4)(ii).

she recalled that in the past, she observed "water come from a cleaning machine," but HHS employees "immediately wiped it up with a towel." *Id.* Initially, Poshefko stated she saw this occur on

> an unspecified number of times both before and after [Appellant's] fall, but then she testified seeing it happen only once. However, Ms. Poshefko was unsure of whether the incident she recalled occurred before or after [Appellant's] fall. Viewing her testimony in the light most favorable to [Appellants] as the non-moving parties, Ms. Poshefko saw water coming from [LRMC's] cleaning machines several times, but she also specifically recalled seeing . . . HHS's employees wipe up the water immediately.

*Id.* at 8-9. The court found Poshefko's statement that "a very small amount of water was left by a machine being transported" did "not support a reasonable inference that in this specific instance, a large quantity of water leaked from a scrubbing machine." *Id.* at 11.

The trial court further reasoned as follows. LRMC "initiated an investigation and was unable to locate any evidence of prior slips and falls on liquids in elevators and no representatives or employees of [LRMC] or . . . HHS were aware of leaks from cleaning equipment. In the case of spills on the floor, . . . HHS's policy was to immediately wipe it up with a towel and put down a 'wet floor' sign." *Id.* at 9. Citing the depositions of HHS supervisor Street, LRMC employee Brown, and LRMC chief operating officer Deborah Willwerth, the court stated the "elevator is open to the public, and there are numerous possible sources of the water, including other hospital equipment, flowers, spilled drinks, and snow and ice tracked in from

outside."[5] *Id.*

The court also found:

> None of [Appellees'] employees saw the accident happen, and there is no evidence any employee knew of the water on the floor until [Appellant] fell. . . . HHS's policy was to put up a 'wet floor' sign in the case of a spill, but no witness testified seeing one the in the elevator on the date of the incident.
>
> The scrubbing machines, which were the only machines at LRMC that used water, were functioning normally on the day of the incident. No agent or employee of any [Appellee] was aware of problems with the machines leaking. Only Ms. Poshefko recalled seeing the cleaning machines leave a 'very small' amount of water on the floor on some occasions, but . . . HHS's employees wiped it up immediately after moving the machine.

*Id.* at 10.

The court concluded Appellants failed to cite sufficient evidence that Appellees "caused the water to be on the floor of the elevator," and that such a conclusion would "require[ ] building inference upon inference." *Id.* However, it also stated, "While it is certainly possible that the water in the quantity found in the elevator came from one of [LRMC's] machines, such a conclusion would require the jury to speculate." *Id.* at 11. The court reiterated that "[t]he source of the water was never determined, and there was no evidence it came from any of [LRMC's] machines, which according to the maintenance logs, were both functioning properly." *Id.* at 10; *see also id.* at 7 ("No problems were reported in the logs on the day of the incident,

---

[5] As stated above, Appellant's fall occurred on January 27, 2010.

indicating that the two scrubbers were functioning normally.").

We now consider the relevant standard of review and general principles for summary judgment. "The Superior Court may overturn a trial court's entry of summary judgment only if there has been an error of law or a clear abuse of discretion." *Estate of Swift v. Ne. Hosp. of Phila.*, 690 A.2d 719, 721-22 (Pa. Super. 1997) (citations omitted). Pennsylvania Rule of Civil Procedure 1035.2 provides in pertinent part:

> After the relevant pleadings are closed . . . any party may move for summary judgment in whole or in part as a matter of law
>
> * * *
>
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2(2).

This Court has stated:

> Summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The judgment may . . . be granted [only] in cases that are clear and free from doubt. A reviewing court must examine the record in the light most favorable to the non-moving party, accepting as true all well-pled facts and giving that party the benefit of all reasonable inferences drawn from those facts. . . .
>
> . . . Pennsylvania law places the burden on the plaintiff to

establish the existence of negligence on the part of the defendant by proving four elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages. . . .

*Estate of Swift*, 690 A.2d at 721-22 (citations omitted).

"A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Id.* at 722. A possessor of land owes the highest duty of care to an invitee. *See id.*

> Applying section 343 of the Restatement (Second) of Torts, this court has explained that a party is subject to liability for physical harm caused to an invitee only if:
>
> > he knows of or reasonably should have known of the condition and the condition involves an unreasonable risk of harm, he should expect that the invitee will not realize it or will fail to protect themselves against it, and the party fails to exercise reasonable care to protect the invitees against the danger.
>
> An invitee must prove either the proprietor of the land had a hand in creating the harmful condition, or he had actual or constructive notice of such condition.

*Id.* (citations omitted).

> [T]he mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition is neither, in and of itself, evidence of a breach of the proprietor's duty of care to his invitees, nor [sufficient to] raise[ ] a presumption of negligence. . . .
>
> In construing this portion of the Restatement, Pennsylvania courts have uniformly held that if the harmful transitory condition is traceable to the possessor or his agent's acts, . . . then the plaintiff need not prove any

notice in order to hold the possessor accountable for the resulting harm. In a related context, where the condition is one which the owner knows has frequently recurred, the jury may properly find that the owner had actual notice of the condition, thereby obviating additional proof by the invitee that the owner had constructive notice of it. Where, however, the evidence indicates that the transitory condition is traceable to persons other than those for whom the owner is, strictly speaking, ordinarily accountable, the jury may not consider the owner's ultimate liability in the absence of other evidence which tends to prove that the owner had actual notice of the condition or that the condition existed for such a length of time that in the exercise of reasonable care the owner should have known of it.

*Moultrey v. Great A & P Tea Co.*, 422 A.2d 593, 596 (Pa. Super. 1980) (citations omitted).

For ease of disposition, we summarize the arguments for Appellants' first four issues together. They first argue the court erred in not reviewing the record in the light most favorable to them when it found they had not established the amount of time between Sister's initial ride on the elevator and return to the same elevator when Appellant fell. Appellants reason that based on this conclusion, the court found insufficient circumstantial evidence that the machine left water in that intervening period of time, and thus "a host of hypothesized alternate causes" was possible. Appellants' Brief at 29. Appellants cite Sister's deposition testimony that the elapsed time "was only a 'couple minutes'" and that "the elevator returned without anyone in it." *Id.* at 29-30. Appellants further aver "there was no evidence of record to fairly suggest any alternate cause of the water," and that instead, the water

was clear, odorless, and free of dirt or other substances which might indicate it "was tracked in from the outside or utilized for any other purpose." *Id.* at 30. They also reason they were not obligated to "negate all other possible causes" of the water, and indeed Appellees "themselves evidence [sic] the reasonableness of the conclusion that the cleaning machine leaked into the elevator." *Id.* at 31, 32. Appellants conclude that in the light most favorable to them, a finding "that it was more likely than not that the cleaning machine continued its pattern of leaking into the elevator at the time of this occurrence is supportable." *Id.* at 31.

Appellants' second claim is that the court's finding—that Appellees and their employees were not aware of problems with the machines leaking water—is contrary to the record. Appellants cite HHS supervisor Street's testimony that since 2008, he "reinforc[ed] to his cleaning crew the obligation to check the elevator for cleaning machine leakage during the transport of the cleaning machines," and that immediately after Appellant's fall, he again "reinforced to his cleaning crew," the danger of the cleaning machines leaking. *Id.* at 34. Appellants further cite HHS vice president Cash's testimony "that the cleaning machines leaked into the elevators because of the effect [of] the up and down change of gravity" and LRMC employee Poshefko's testimony "that the cleaning machines recurrently leaked water into the elevators during their transport." *Id.*

Appellants' third claim on appeal is that the court's finding, that "the

cleaning machines were inspected at the end of the shift, and were functioning normally," is contrary to the record. *Id.* at 40. Appellants cite Street's admission "that he did not inspect the cleaning machines at any time after the accident[,] and there is no record evidence that anyone else did." *Id.* at 40-41.

In their fourth claim, Appellants aver the trial court erred in its interpretation of **Cuthbert v. City of Phila.**, 209 A.2d 261 (Pa. 1965), to hold Appellants were required to eliminate "other causes as suggested by the evidence." Appellants' Brief at 42 (citing Trial Ct. Op., 11/27/13, at 5-6). Instead, Appellants maintain, the correct standard pursuant to **Cuthbert** is that a plaintiff must eliminate "other causes, **if any, as were fairly suggested by the evidence**," and in this case, none of the alternate causes cited by the trial court were fairly suggested by the evidence. Appellants' Brief at 42-43. We hold Appellants are entitled to relief.

In **First v. Zem Zem Temple**, 686 A.2d 18 (Pa. Super. 1996), the plaintiff fell while dancing at a wedding reception. *Id.* at 20. There was a temporary nine-by-twelve foot dance floor, which "consisted of numerous panels . . . made of a wooden parquet-type material," and was supplied by one defendant and installed by the co-defendant venue. *Id.* The plaintiff filed a negligence suit, alleging, *inter alia*, the defendants failed to ensure the dance floor was safe, install and inspect it properly, and warn her of the

dangerous condition.[6] *Id.*

At her deposition, the plaintiff testified "she fell because the heel of her shoe slipped on the dance floor" and that she had observed one section of the floor was a lighter color. *Id.* The disc jockey at the reception, who witnessed the plaintiff's fall, testified: (1) one "section of the dance floor . . . was discolored and extremely, extremely slippery;" (2) "he noticed . . . other couples dancing on the floor avoided the slippery area, made comments . . . that the floor was slippery, and, when they came into contact with the area, appeared to be slipping on the floor's surface;" and (3) he "observed that . . . where the panels of the dance floor were connected there was a 'metal lip' which was raised higher than the other areas of the floor." *Id.* The defendants pointed to the disc jockey's testimony that the plaintiff "did not fall until she was approximately three to four feet away from these areas" and argued "the slippery or raised areas of the dance floor could not have caused [the plaintiff] to fall." *Id.* at 20-21.

The trial court granted summary judgment in favor of the defendants, finding the plaintiff "could not identify the reason [she] fell on the dance floor and could not prove directly that the identified 'hazards' on the floor caused her to fall." *Id.* at 21.

On appeal, this Court noted:

---

[6] The plaintiff had also proceeded on a theory of strict products liability with respect to the dance floor. *First*, 686 A.2d at 20.

> Although it is clear that a jury is not permitted to reach a verdict based upon guess or speculation, it is equally clear that a jury may draw inferences from all of the evidence presented.

> > It is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability . . . . The facts are for the jury in any case whether based upon direct **or circumstantial evidence** where a reasonable conclusion can be arrived at which would place liability on the defendant. It is the duty of [the] plaintiffs to produce substantial evidence which, if believed, warrants the verdict they seek. The right of a litigant to have the jury pass upon the facts is not to be that a reasonable man might properly find either way. . . .

*Id.* (quoting *Cade v. McDanel*, 679 A.2d 1266, 1271 (Pa. Super. 1996))

(emphasis added). The Court further stated,

> Negligence may be established by circumstantial evidence, and where a plaintiff describes the nature and location of a fall, it is for the jury to determine whether a defect which existed in the **small** area described was the cause of the injury, and if the defect was of sufficient consequence to charge defendants with negligence . . . .

*First*, 686 A.2d at 22.

The Court reversed the award of summary judgment to the defendants. *Id.* It held "there [was] a genuine issue for trial because [the plaintiff] presented sufficient circumstantial evidence from which a jury could infer reasonably that a slippery or raised area of the floor caused [her] to fall.[ ]" *Id.* at 21. It reasoned:

> Without resort to conjecture, the jury would have had a

- 13 -

rational basis to choose, over any other inference suggested by the evidence, the inference that there was a defect in the dance floor, that the dance floor was unsafe and that [the plaintiff] fell as a result thereof. We note that the lower court agreed with our conclusion that there was sufficient evidence to infer that certain 'hazards' existed on the dance floor. However, the lower court then concluded that there was not sufficient evidence to infer that these 'hazards' caused [the plaintiff] to fall because she fell approximately three to four feet away from the slippery or raised areas of the floor. We find that this was error.

*Id.* at 22 (citation to record omitted).

In the case *sub judice*, we agree with Appellants that they cited sufficient circumstantial evidence upon which a jury could conclude Appellees were negligent. **See First**, 686 A.2d at 22. First, we disagree with the trial court's finding that Sister failed to state the amount of time from when she exited the elevator, leaving the two men and the cleaning machine on the elevator, and when Appellant entered the same elevator and fell. The court cited Sister's deposition testimony at page 44 for this finding.[7] Trial Ct. Op., 9/11/13, at 8. Our review of pages 44 and 45 reveals the following exchange:

[Sister:] I don't remember well if [the elevator stopped for the men and the machine to enter,] but I remember they got on after I did. I got out of the elevator, and I went to my brother-in-law's room. And my sister[, Appellant,] said, "Oh that's good that you arrived. Can you go with me to my house because I'm going to go home, take a shower and change my clothes?"

---

[7] Sister testified at the deposition with the assistance of an interpreter.

>      **And as we get to the elevator, a couple minutes**, my sister gets on the elevator, she falls, and I hold the door. I don't remember exactly how everything happened because everything was very quick and it was so long ago.
>
> [LRMC's attorney:] When you got to your brother-in-law's room in the hospital, how long did you stay in the room with your brother-in-law and your sister?
>
> [Appellants' attorney:] Objection, asked and answered. She just told you. She gave you a time. And I'm not going to speak objection [sic]. She just said the time.
>
> [LRMC's attorney:] Well, I'm just asking you the amount of sometime [sic] you spent in your brother-in-law's room with your sister before you went to leave?
>
> [Appellants' attorney:] Same objection.
>
> [Sister:] **I don't remember.**

Dep. of Ida Geib, 7/21/11, at 44-45.

Although Sister testified she did not remember how long she was in Appellant Julio's hospital room before she and Appellant left together, she also stated, in her immediately preceding response, "And as we get to the elevator, **a couple minutes**, my sister gets on the elevator, she falls." *Id.* at 44. While the context of Sister's reference to "a couple minutes" is not entirely clear, *see id.*, we disagree with the trial court that Appellants failed to present **any** evidence of how much time passed between Sister's initial ride in the elevator and Appellant's fall. The court's Pa.R.A.P. 1925(a) opinion acknowledges Sister's testimony: "[Sister] estimated her time away from the elevator in vague, non-descriptive terms **and only estimated that it was a couple minutes**." Trial Ct. Op., 11/27/13, at 5 (emphasis added).

- 15 -

Accordingly, we conclude that for purposes of reviewing Appellee's motions for summary judgment, in the light most favorable to Appellants, Sister's testimony established the amount of time was a couple minutes.

We also disagree with the trial court's conclusions that the cleaning machines were wholly functioning properly that day—based on the fact that "[n]o problems were reported in the [maintenance] logs" that day—and therefore the machines could not have leaked water in the elevator. *See* Trial Ct. Op., 9/11/13, at 7. Instead, we hold Appellants provided enough circumstantial evidence to submit to a jury the question of whether Appellees' cleaning machine leaked the water that caused Appellant's fall. To overcome Appellees' motions for summary judgment, it was not necessary that every fact "point unerringly to liability." *See First*, 686 A.2d at 21. Instead, Appellants only had to show "sufficient facts for the jury to say reasonably that the preponderance favors liability." *Id.* Furthermore, as Appellants have established "the nature and location of [Appellant's] fall" in a small space—an elevator—they may establish negligence by sufficient circumstantial evidence. *See id.*

Viewing the evidence in the light most favorable to Appellants, Sister was in an elevator with two men and a cleaning machine, she disembarked before them, a couple minutes later the same elevator returned to Sister's floor with no one in it, Appellant entered the same elevator and immediately slipped on water and fell, and the water was clear and free of dirt and did

not lead out of the elevator. Furthermore, Appellees' employees acknowledged the cleaning machines sometimes leaked: (1) LRMC employee Poshefko previously observed the cleaning machines leak and HHS employees clean up the water; (2) HHS vice president Cash conceded there is "a small concern" that a machine that is otherwise functioning properly could leak water, the "general safety precautions" include looking back to into an elevator to ensure no liquid leaked while transporting it, Dep. of Sheldon Cash, 1/6/12, at 18-19, 23-24; (3) HHS director Street testified that "a few days after this slip and fall," it was reinforced to HHS cleaning crews at LRMC hospital that when they move equipment "in and out of the elevators or through the hallways[ to] look[ ] behind to make sure there is no, no leakage, or a bucket might have spilled something on the floor," and this precaution was reinforced "quite a bit." Dep. of William Street, 1/6/12, at 39-41.

We also distinguish the facts in this case from those in *Estate of Swift*. In *Estate of Swift*, the decedent slipped and fell in a restroom on the defendant hospital's premises. *Estate of Swift*, 690 A.2d at 721. Several medical reports indicated the decedent stated that her fall was caused by water on the floor. *Id.* at 721. The decedent sustained a fracture of her femur and, after a course of events, died. *Id.* Her estate commenced a wrongful death action against the hospital, and the trial court granted summary judgment in favor of the hospital. *Id.* at 720-21.

On appeal, this Court noted the estate presented evidence that the decedent had stated "that her fall was caused by water on the floor." *Id.* at 722. The estate also cited the hospital's "janitorial maintenance records which indicate that the person charged with maintaining the area where [the d]ecedent fell had left the hospital property four hours prior to the accident." *Id.* This Court stated, "From this fact, [the estate] infer[red] that [the hospital] was negligent in not replacing the missing maintenance person and, therefore, caused the condition to exist." *Id.* This Court disagreed, holding that the estate "failed to show in the record that [the hospital] had notice of the condition," and "present[ed] no evidence as to how the water arrived on the floor," "how long the condition existed," and "that the area was not monitored or maintained by other members of [the hospital] staff." *Id.* We concluded: "Without such proof, [the estate] cannot establish a breach of the legal duty owed to [the d]ecedent by" the hospital. *Id.* Accordingly, we affirmed the summary judgment in favor of the hospital. *Id.* at 723.

In the case *sub judice*, Appellants have, unlike the estate in **Estate of Swift**, presented circumstantial evidence of how the water arrived on the floor, how long this condition existed, and that the elevator was not monitored or maintained by Appellees during that time. **See id.** The trial court found:

> While it is certainly possible that the machine [Sister] saw on the elevator . . . required water and that it was leaking

> water on the date of the incident in the quantity found in the elevator, such a conclusion would require the jury to speculate. The jury would further have to speculate as to what occurred between the time [Sister] got off the elevator and the time she returned with [Appellant].

Trial Ct. Op., 11/27/13, at 10-11. We disagree. When considered together, Appellants' evidence was sufficient to submit to a jury to determine whether Appellees' machine leaked the water, and whether the water caused Appellant's injury. **See First**, 686 A.2d at 22.

For the above reasons, we reverse the order of the trial court granting summary judgment in favor of Appellees LRMC and HHS. We also vacate the order to the extent it granted HMA's motion for summary judgment on the grounds discussed above. However, HMA's motion for summary judgment also averred the lack of any agency with LRMC and HHS, and accordingly claimed it could not be held vicariously liable. The trial court did not reach this issue. Trial Ct. Op., 9/11/13, at 13 n.4 ("Because the Court's ruling on [the first] issue is dispositive, there is no need to discuss . . . HMA's first issue, vicarious liability."). We therefore vacate the portion of the court's order granting summary judgment to HMA; HMA may continue to litigate this ground for summary judgment.

Appellants' final issue on appeal is that the court erred in not considering the deposition testimony of Eric Perrone that LRMC nurses told him the cleaning machine caused Appellant's slip and fall. Appellants' Brief at 45. We reiterate that Eric is Appellant Julio's son and representative. The

trial court declined to consider this evidence on two bases. The first basis was that Appellants failed to present this evidence, and instead it was Appellee HHS who submitted it as an attachment to a motion *in limine.* Trial Ct. Op., 9/11/13, at 9 n.4 ("If [Appellants] wanted the Court to consider Eric Perrone's testimony, it was their responsibility to attach it to their response."). In light of our disposition of reversing and vacating the court's order, we need not consider this basis.

The trial court further found the evidence was hearsay which was not admissible as an opposing party's statement under Pa.R.E. 803(25).[8] That subsection provides that a statement is not excluded by the general rule against hearsay when "[t]he statement is offered against an opposing party" and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Pa.R.E. 803(25). Although the trial court's ruling was made in the context of considering summary judgment, its analysis would be equally applicable at trial. **See Turner v. Valley Hous. Dev. Corp.**, 972 A.2d 531, 537 (Pa. Super. 2009) ("[A] motion for summary judgment cannot be supported or defeated by

---

[8] The trial court stated that "[n]otwithstanding the fact that the deposition testimony of Eric Perrone was attached as part of the motion for summary judgment or [Appellants'] response, the Court is precluded from considering it as it constitutes hearsay." Trial Ct. Op., 9/11/13, at 9-10. Pursuant to **Commonwealth v. Reed**, 971 A.2d 1216 (Pa. 2009), we consider both grounds. **Id.** at 1220 ("[W]here a decision rests on two or more grounds equally valid, none may be relegated to the inferior status of obiter dictum.").

statements that include inadmissible hearsay evidence.").

Because this issue may arise again when the proceedings resume after remand, we review that decision now.

The trial court reasoned as follows:

> In his deposition, Eric Perrone stated that he was 'pretty sure [he] heard . . . a discussion about the maintenance crew going up and down with the maintenance machine" and that some unidentified nurses said they thought the water came from the cleaning machine. However, Eric Perrone was unable to identify the nurses who made those statements and, therefore, unable to establish the statements concerned a matter within the scope of the nurse's agency or employment. **See** [**Harris v. Toys "R" Us-Penn, Inc.**, 880 A.2d 1270, 1277 (Pa. Super. 2005),] **Biddle v. DOT**, 817 A.2d 1213, 1216 (Pa. Commw. 2003).

Trial Ct. Op., 11/27/13, at 10.

On appeal, Appellants cite the same case relied on by the trial court—**Harris**—in averring the Superior Court has "recognized that unidentified agents of a defendant can . . . provide admissions admissible as exceptions to hearsay." Appellants' Brief at 45. Appellants reason, "To hold that each . . . employee[ ] must be specifically identified by name, where circumstances otherwise reveal that they were working at the premises at the time of the occurrence, is respectfully not the law." **Id.** at 46-47. We disagree.

When reviewing an evidentiary ruling, "we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law." **Phillips v. Lock**, 86 A.3d 906, 920 (Pa. Super. 2014). In **Sehl v.**

***Vista Linen Rental Serv. Inc.***, 763 A.2d 858 (Pa. Super. 2000), the trial court precluded testimony from a restaurant owner about "statements made by [a] carpet delivery person."[9]  ***Id.*** at 861.  "Later testimony" identified two people who could have made that statement.  ***Id.***  Nevertheless, the trial court reasoned the plaintiffs could not positively identify the declarant, and thus the court could not "determine whether the declarant was indeed . . . an agent under" Rule 803(25).  ***Id.***  The trial court further stated it could not determine whether the statement was made in the scope of that person's employment, where "[t]here was no evidence or offer of proof that the driver [or delivery person] for a linen service would have as part of his job description the authority to issue such statements."  ***Id.*** at 862.

***Sehl*** was discussed in ***Biddle***, the 2003 Commonwealth Court case relied on by the trial court.[10]  ***Biddle***, 817 A.2d at 1215-16.  In ***Biddle***, the plaintiff/driver sought to testify about statements made by someone he believed was a supervisor in the Department of Transportation ("PENNDOT").  ***Id.*** at 1215.  "The record reflect[ed] that the alleged supervisor was never found or identified by" the plaintiff or PENNDOT.  ***Id.***

---

[9] In ***Sehl***, the plaintiff was working as a waitress in a restaurant when she "slipped and fell on a wet rug, which had been laundered and delivered by" a linen company, one of the defendants.  ***Sehl***, 763 A.2d at 860.

[10] "Although decisions of the Commonwealth Court are not binding on this Court, we may rely on them if we are persuaded by their reasoning." ***Charlie v. Erie Ins. Exch.***, 100 A.3d 244, 253 n.9 (Pa. Super. 2014) (citation omitted).

On appeal, the Commonwealth Court affirmed the trial court's preclusion of the proposed testimony under Rule 803(25). *Id.* It held, "Like in *Sehl*, [the plaintiff] was unable to identify the person he spoke with near the site of the accident. Thus, he failed to meet his burden of showing that the statements concerned a matter within the scope of the unidentified person's responsibilities." *Id.* at 1216.

In the instant appeal, Appellants do not deny they have not identified the persons who allegedly told Eric that the cleaning machine caused Appellant's accident. Appellants aver:

> **[T]he unidentified declarant** is a nurse working in the hospital, day by day, as witnessed by Eric Perrone as he visited his father. Another nurse, Linda Brown, and her secretary, Ellen Poshefko, who have been specifically identified in the instant case have made clear that they are employees of the hospital in this matter. There is no proof of record that the nurses of the hospital were employed by any other entity other than the hospital within which they were working at the time of the occurrence. . . .

Appellants' Brief at 46 (emphasis added).

In the above paragraph, the first sentence reflects Appellants' concession that the declarant has not been identified. The ensuing discussion of LRMC employees Brown and Poshefko is not relevant to the identity of the unidentified declarant. On appeal, Appellants cite no evidence to corroborate their allegation that the declarant was an employee, let alone a nurse, employed by any Appellee. Accordingly, we agree with the trial court that they have failed to establish the declarant was an agent of any

Appellee and that the statements were made in the scope of her employment.  *See* Pa.R.E. 803(25); *Sehl*, 763 A.2d at 861.

For the foregoing reasons we reverse the granting of summary judgment in favor of Appellees LRMC and HHS.  We vacate the portion of the trial court's order granting summary judgment in favor of HMA, and HMA may pursue its summary judgment claim concerning vicarious liability.

Order reversed in part and vacated in part.  Case remanded with instructions.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/10/2015